## CERRUTI v. STINSON AIRCRAFT CORPORATION.

### No. 6897.

District Court, E. D. Michigan, S. D.
March 7, 1938.

Elliott J. Stoddard, of Detroit, Mich., for plaintiff.

Fred Gerlach, of Chicago, Ill., and Emmons, Oren & Sleeper (by Harold H. Emmons), of Detroit, Mich., for defendant.

TUTTLE, District Judge.

This suit is brought by F. A. Cerruti, the patentee and owner of patent No. 1,-310,389, issued to him July 15, 1919. At one time, a corporation had been organized for the purpose of manufacturing what is disclosed in the patent and one airplane was made substantially in accordance with the showing of the patent, but the plane did not work and never left the ground. Therefore, the corporation never made an-

other plane, did not make any money, the stockholders lost what they put into it, and the corporation went out of business. It is abandoned. But good and sufficient assignments have been made by the stockholders to Cerruti so that it takes care of the ownership of the patent, and I find no difficulty about that. The plaintiff has the right to sue and is properly in court on this patent.

The patent, of course, expired on July 15, 1936, but shortly prior to that date this suit was brought and the suit is properly here. The court would not be able to issue any injunction if the patent were valid and infringed because there has been no patent monopoly for a year and a half. But the court could and should, if the patent is valid and has been infringed by the defendant, assess damages and profits for the plaintiff.

Plaintiff has impressed me with his natural ability and his sincerity with reference to this art. This is the only patent granted to him, however, in this art. This one did not bear any fruit.

When I come to interpreting claims 25 and 26, which are the only ones in suit, I should not go beyond the bare, plain language of the claims. There is nothing in the history of the patent to show that it is entitled to any broad interpretation. (For claims 25 and 26, see note 1.[1]) There is nothing in the history of it that causes the court to feel as if the art had been affected in any way by what this patent did. It never put its fingerprints on the art in such a way that it changed the course or direction of the art. The patent hasn't helped the world. It is one of many, many pure paper patents. It is poorer than a paper patent because the machine of which it was a part was tried and did not work. So it stands there not only as a paper patent without any showing in its favor, but it has tried to accomplish something in the art and missed the mark.

If I give it anything at all, it must be something which it discloses sufficiently new and novel and useful to rise to that degree of genius that we reward with a patent.

The Patent Office by granting this patent has endowed it with this presumption of validity.

Looking broadly at the plaintiff's patent, here is the thing he thought was new which entitled him to a patent. He was going to make an airplane with wings hinged to the fuselage at their inner ends in such a way that he could raise them and lower them and change the dihedral while the plane was on the ground and being prepared for flight.

Long before this patent, the dihedrals were understood and the necessity of taking into account how the wings were going to extend out from the fuselage, and the angle at which they were to extend. It had been recognized as an important matter in aeroplane construction. This patent does not attempt to tell anything new about dihedral angles. The patent proposes to put wings on the plane extending from the fuselage, with hinges so the wings can be lifted or lowered, and put at such dihedral as the man that operates the plane desires. It had been done in the same manner before by hinges at the inner ends, which is the only place the wing could be hinged to the fuselage.

He did not invent anything new about the fuselage. It was a pretty indefinite and hazy part of the plane at that time. Planes were not like a motorboat; they weren't like an automobile. The fuselage was, at the time of the application for this patent, more like a central frame that supported the things that had to go on the airplane than it was like the usual body of a carrying vehicle. This flying in the air was comparatively new in 1919 and they were not making the fuselage definite and fixed and clearly seen like it is now, but it was the center part of the plane, and his idea was to hitch the wings to it and there wasn't anything new about that. The wings had been hinged at the inner ends to the fuselage so that they

---

1 Claim 25. In an aeroplane the combination of a fuselage; supporting surfaces pivotally connected to the fuselage at their inner ends to extend laterally therefrom; and adjustable struts to support said surfaces in fixed position from the fuselage in a substantially horizontal plane and at right angles to the fuselage or at different dihedral angles thereto.

Claim 26. In an aeroplane the combination of a fuselage; supporting surfaces pivotally connected to the fuselage at their inner ends to extend laterally therefrom; and adjustable struts to support said surfaces in fixed position from the fuselage at different angles of incidence and at right angles to the fuselage or at different dihedral angles thereto.

could be lifted and lowered. There was nothing new about the wing.

There were, of course, many old ways of fastening the wings to the fuselage. Some had been fastened by guy wires and by using tension from opposite directions held in the desired position. Some had been held·by struts which were rigid for both pull and push. It was old to use wires for tension and to use struts which, by both tension and compression, held wings in position.

The courts should be careful to see that when something like an aeroplane is invented somebody else doesn't come along, substitute one old equivalent for another in a new art, get a patent on it, and thereby deprive the one who made the invention of the full enjoyment of it without paying tribute to anyone.

The strut is the equivalent in almost any place for a guy wire. Every time we ride along the highway we see posts supported in both ways. One is the common equivalent of the .other.

Unless the law is interpreted as I have indicated, then every time some one makes a great invention like the aeroplane others will come along with a patent claimed to be a new combination, but in reality just a use of equivalents. It is the duty of the court to watch and see that this sort of thing does not happen, because, if it does, the patent law becomes a millstone around the neck of progress rather than a motor to drive it forward.

We have here a combination of equivalents which is claimed to be an invention. The combination includes the old airplane, the old fuselage, and the old wing attached to it in an old way. It is claimed that in the prior art all of these are not found in one aeroplane. That is the trouble with these combinations. If enough of these old elements are selected it may be possible to say that it is the first time they have been grouped together. I could find lots of Scotchmen living in white houses, but when I say a Scotchman living in a white house built of tile, with a garage out back made of wood, and a car in it seven years old that is made in Ohio, I may have a combination that has never been duplicated. It is not enough that the combination be new, but it must function in some new and useful way. It is conceded that every single element of this combination is old, but it is claimed to be a new combination.

We find all of these elements of the combination present in the tail of an aeroplane. The tail looks and operates like a wing, but is used for a tail support.

As we go through this art we find all these things present and near to each other. This patent claims the idea of attaching those old wings to the old fuselage by an old hinge joint and raising and lowering it by an old strut, and then tilting it for the angle of incidence. All these things were old.

It would be easy to say that this patent was not infringed by the defendant, with the claim as it is, and with the idea that you can't give it a broad interpretation. Every voice that speaks of its history says that it cannot be given a broad interpretation. It hasn't revolutionized any art. What he claims to have invented is an airplane so constructed that while it was still on the ground he could, with the hinged construction of the wing to the fuselage, and with the adjustable struts hinged at one end to the wing and the other end to the fuselage, and with a sliding collar at the place where the front wing was hinged to the fuselage, change not only the dihedral angle, but, by lifting and lowering that front edge, to which it was attached on the shaft, change the angle of incidence. He made use of these same things in such a way that, in addition to doing that, when he wanted to put the outfit in storage, by loosening the struts and taking them off from their fastenings, he could swing the wing back next to the body and in that way the aeroplane would take up less room.

Now, that is his invention. How does he try to enforce it as against the defendant and hold the defendant an infringer? He takes two broad claims that are found in this patent and he tries to apply them to a defendant who hinges his wing at the inner end to the fuselage, puts in one rigid strut and one movable strut, which cannot be turned in the way that the plaintiff turned his with the plainly disclosed and stated purpose of having the struts and wings so hinged and adjusted that with the movable struts he could change both the dihedral angle and the angle of incidence. The defendant cannot do those things which the plaintiff received his patent for doing. Defendant's machine is not built so that he can tilt his whole wing for the desired angle.

Claims 25 and 26 are the claims relied on, and the only claims relied on. These are the broad claims. The bill describes other claims but they have been withdrawn. The structure made by the defendants is not built for tilting in the manner described in the plaintiff's plane at all. It is contended by plaintiff that, because defendant has one rigid, unyielding strut, and one that is yielding, when the yielding strut is lengthened or shortened it warps the wing and thereby does change the angle of incidence and thereby does infringe the patent.

The courts might go that far with a patent that has turned the world topsy-turvy and done wonderful things. But the court should not do it and cannot do it with a patent that has not put any mark at all on the art. A more simple way to dispose of this, and a fairer way, is to say that those two claims are void on the prior art. Every single element of those two claims is to be found in the prior art, and every element performing in this very art the very same mechanical service that they did in the plaintiff's patent.

█ Of course, the fair test is: Does the patent disclose a new combination that produces a new result and is the step big enough to reward it with a patent? I say no as to that. It was only necessary to go back to the tail of an old airplane to find everything which the plaintiff used to raise and tilt the wings.

█ If a carpenter can find something right in the woodshed that he wants to use in the kitchen, he ought not to get a patent for going out in the woodshed and bringing it into the kitchen. A valid patent cannot be obtained for raising, lowering, and tilting the wings of an airplane in exactly the same way that the tail of an airplane has been raised, lowered, and tilted. The tail and the wing are each a flat surface that you want to hold up against air pressure and you want it to extend out from the fuselage and you want to be able to adjust it, and you take every bit of the rigging that was used to hold up the tail and put it in the wing. I say, no patent for that. It doesn't rise to that degree of genius and invention that ought to be rewarded by a patent. To do that sort of thing would tie up the business of this country so that no one would be able to make anything without infringing somebody's patent.

█ Some one gets a great invention like an automobile, an airplane, or a steamboat, and along comes these patent-minded men and stick in some equivalents and get a patent. If such patents are sustained, it means that the man who made the real invention cannot improve his own machine by using these equivalents. One patent picks off one good equivalent, another grabs another good equivalent, and here is the man with his own invention and he wouldn't be able to make it except in the way he had claimed it. He couldn't use his own invention in the best ways. The man who makes a real invention doesn't, in the first making, select the best of all the equivalents. If he has made an invention, he should be protected in all ways of doing it unless they go beyond equivalents and rise to the dignity of new invention.

If we don't interpret the patent laws in that way, then instead of encouraging inventions and stimulating trade and giving us greater conveniences and better things to use, it is going to work just the other way and be a brake on the wheels of progress to prevent us from enjoying the things that have already been invented in their full and proper measure.

Everything that is invented should be permitted to be built by the patentee in the best way that he can build it by using equivalents.

█ The patent to Reiger, 962,977, June 28, 1916, and the English publication, Flight, of 1911, are sufficient to void the claims in suit.

The patentee tries to avoid this prior art by saying, "Those wings were to be adjusted in the air and not on the ground." That doesn't impress me. A machine that is built for adjusting as to dihedral angle or angle of incidence in the air can also be adjusted before it gets into the air.

It would be more of a test of genius if it were turned around and if they were saying to me, "Here is an adjustment that had always been made on the ground and I fixed it so while in flight in the air, with all those other complications and little opportunity to get at it, I could make the adjustment."

Another patent is the French patent, 423,944, to Douillet, May 1, 1911. It has a universal joint at the center of the fuselage and the wing pivots at the edge of the

fuselage. That very method of arranging that plane prevents the change of the angle of incidence unless it is done by warping, which is the only manner in which it can be claimed the defendant infringes these claims.

The plaintiff finds himself in that dilemma. In the first instance, in order to distinguish the patent from the prior art, he relies upon little differences which are mere equivalents, but immediately he comes over to the subject of infringement, he relies strongly on the doctrine of equivalents. To follow that method of reasoning would hold the defendant liable for doing exactly the thing old in the art.

The French patent, 435,275 to Garnier, 1912, had the identical strut that is used by the patent in suit.

The patent to Pagny, 1,099,762, June 9, 1914, is the one to which I made reference as having a tail which was raised and tilted in the manner shown in the patent for shifting the wings. These two claims in suit read upon Pagny. If we don't say it reads on it, then, as I have said before, all the patentee did was to take the equipment out from under the tail and put it under the wing. It doesn't matter which way we construe it; the result is the same. In the one case, we would say the claims were void because they read directly on Pagny. In the other case, we would say it did not take ingenuity enough to go into this very same art, the same machine, and take a structure from the tail and put it into the wing.

The decree will hold the claims in suit void and dismiss the bill with costs to plaintiff.