## GILMORE et al. v. SMITH.

### No. 1649.

Circuit Court of Appeals, Tenth Circuit.

Sept. 8, 1938.

Arthur C. Brown, of Kansas City, Mo. (Robert D. Garver, of Kansas City, Mo., and H. A. Russell, of Topeka, Kan., on the brief), for appellant.

Lester B. Clark, of Houston, Tex. (Jesse R. Stone, of Houston, Tex., Robert E. Russell and Doran, Kline, Cosgrove, Jeffrey & Russell, all of Topeka, Kan., and Andrews, Kelley, Kurth & Campbell, of Houston, Tex., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is an appeal from a decree in an action in conventional form for alleged infringement of patent No. 2,008,934, issued to plaintiff in July, 1935. The defenses were invalidity and noninfringement. Claims 1, 2, 11 and 13 were in issue. The court determined that they were valid and infringed. Defendants appealed.

The patent relates to means for detecting leaks in pipe lines, and the apparatus is called a soundograph. Claims 1 and 2 are process claims, and claims 11 and 13

are apparatus claims. Plaintiff filed a written disclaimer in the office of the Commissioner of Patents in November, 1935. He disclaimed any method in claim 2 of detecting leakage from pipes, except where the fluid escaping is a gaseous fluid, and he further disclaimed any device from claim 11, except that which is capable of picking up the sound carried by a gaseous fluid.

Leakage from underground pipes through which gas and other liquids were transported and distributed had been a serious problem for many years prior to .the advent of the patent in suit. Various methods had been in use for meeting it. One was the so-called bar test, one the odorizing test, one the vegetation test, and one the pressure test. They were inaccurate and inefficient. Some were expensive and none was satisfactory. Plaintiff sought to solve the problem through the process and apparatus embodied in his patent. It consists of two elements or units. One is called a pick-up or microphone, and the other an amplifier. The process taught in claims 1 and 2 is to pick up the sound transmitted by the gas in the pipe which has been caused by the leak from the pipe, amplify the sound thus picked up, and measure the volume or intensity of it as an indication of the location of the leak with respect to the point of the pick-up. The apparatus disclosed by claims 11 and 13 is a microphone with a housing adapted to pick up the sound from the fluid in the pipe caused by the leakage, means to connect the microphone to the leaking pipe so that the sound transmitted through the gas from the point of leakage may be picked up, and means to indicate the intensity of the sound whereby the location of the leak with respect to that of the service connection may be determined with reasonable accuracy. The specifications and diagrammatical sketches disclose two forms of apparatus. The first (figure 4) consists of a microphone within a housing which is connected by a nipple to the end of the pipe from which a meter has been disconnected. Two diaphragms in the microphone are sealed to the housing. After the connection with the pipe has been made and the stopcock is opened, the gas enters the microphone and comes in contact with the first diaphragm. The diaphragm detects and picks up the sound caused by the vibrations set in motion through the escape of the gas at the leak and transmitted by the fluid. The two diaphragms are connected with a spring. The sound vibrations detected by the first diaphragm are transmitted to the second through the spring connection and through the vibration of the air column in the space between the two. The sound vibrations are then transmitted from the second diaphragm through an electric current out an aperture in the back of the microphone unit to the amplifying unit. The amplifying unit steps up electrically the vibrations, and measures and records them by suitable meters; and in addition it has headphones through which sound is heard. The other form of apparatus (figure 5) discloses the same microphone unit except that it does not have any springs, and there is no separate amplifying unit with electric energy or meters. When it is used the sound is heard at the aperture in the back of the microphone element; the person making the test listens at that point rather than at an amplifying unit. In using either apparatus, when a leak is detected, several tests are made at meters in different residences or at other places of connection with the pipe and through the intensity of the sound, the location of the leak is determined. The device with the separate amplifying unit weighs twenty-three pounds, and plaintiff has sold only eleven of them since 1933. The cost at the outset was $650, but it has since been reduced to $390. None of the devices without the separate amplifying unit has been sold or put into use.

Defendant Gilmore obtained a patent in November, 1935, likewise covering an invention for means in detecting leaks of gas from pipes or other containers, called a stethoscope; and defendant The Gas Service Company makes use of the apparatus in the operation of its business. The patent contains one claim. It describes a device comprising a housing with a nipple inlet arranged for connection to the pipe to be tested, and tubes for use in conveying vibrations to the ears of the person making the test. There are two opposed diaphragms arranged inside the housing, and they are sealed to it. They define a chamber there-between, and the opposite side of each closes off a portion of the housing so as to define a sound box for magnifying the vibrations impinged on the diaphragm by the gas in the chamber. There is a bell on the outside of each diaphragm. It is mechanically separated from the dia-

phragm, and forms with the outer side of its corresponding diaphragm a chamber devoid of gas and arranged to collect and magnify the vibrations set up in the diaphragm. Leading from the approximate center of each bell is a relatively small J-shaped conduit. These conduits merge at a convenient point outside the housing and in close proximity thereto. Conventional means such as stethoscope binaurals are connected at opposite longitudinal sides of the point at which the conduits merge. In practical use the meter is disconnected from the pipe and the device is connected through the nipple arrangement. The stopcock is then opened and gas is admitted into the chamber in the housing between the two diaphragms. It impinges upon the diaphragms and the person making the test listens through the headphones for sound indicating a leak. If a leak is detected, similar tests are made ·at various places along the line and the location of the leak is determined by the intensity of the· sound at the various points tested. The apparatus is essentially a stethoscope. It is small; a laborer can carry it in his kit as an ordinary tool; it does not require skill in operation; and it sells for $20.

The validity of the patent issued to plaintiff is challenged for lack of patentable invention. It had long been known that the escape of water or gas through an aperture in a pipe line under pressure sets up vibrations or sound waves in the fluid inside the pipe and in the pipe itself; that the behavior of the two fluids is quite similar in respect to the creation of such sound waves; that sound waves travel more readily through a fluid than through a pipe line and for that reason can be heard farther away from the point of leakage; and that sound waves in fluids can be picked up and detected at various distances from the point of leakage, dependent upon the size of the aperture, the degree of pressure, and the density of the fluid. These features of the picture were old. Plaintiff did not make any discovery in respect to them. Patent No. 267,825, issued to Bell in 1882, discloses a method and apparatus for locating leaks in underground pipes for the transportation of water or gas. A sound conducting rod is brought into engagement with the pipe and a sound amplifying instrument is then connected with the ·rod. The vibrations induced in the pipe—not those in the fluid in the pipe—are thus ·tested, recorded, and amplified, but

without electric energy; and the location of the leak is determined by the making of tests at various places along the line. Patent No. 1,886,914, issued to Slichter in 1932, brought into the art a method and apparatus for detecting sound of leakage directly from water in a reservoir and conducting it through means of an ordinary stethoscope to the ears of the listener. The device comprises two sets of receiving units spaced about four feet apart, one for determining the horizontal direction of the sound and the other for determining the inclination of it on its dip. The units are mounted on a horizontal arm which may be turned about a vertical axis by means of a vertically extending support which is rotatably supported at its upper end by a bracket. Each receiving unit comprises a sound-transmitting wall or diaphragm, one surface of which is exposed to the water and the other to an air column leading to the observer. The person making ,the test lowers the device into the water ·from his position· in a boat, and then rotates it. He listens through the stethoscope, and from the sound detected determines the approximate location of the leak. No electric amplification or any electric device for measuring the intensity of the vibrations is used, but the sound wave in the fluid as distinguished from that in the container is detected. Patent 1,830,237, issued to Morse in 1931, relates to an apparatus for detecting sound. It is called a sound analyzing device and is said to be particularly useful in locating and studying noises emanating from moving parts of machinery. The particular sound to be studied is picked up at a given point and conveyed through a flexible tube to a microphone transmitter encased in a relatively sound-proof housing. From the housing it is conveyed through a suitable connection to an amplifying unit where it is amplified with electric energy and its quantity and intensity recorded with appropriate meters. The method of amplification after the sound reaches the amplifying unit is markedly similar to that disclosed in the separate amplifying unit in figure 4 of the patent in suit.

It is trite to say that the issuance of a patent after due consideration of the application creates a presumption of validity as that is a rule of universal recognition and acceptation. But the presumption is one which may be overcome. Here, in view of the natural elements which had been well known for a long time and the

teachings of the respective patents issued to Bell and Slichter, it was not patentable invention to devise the means and method disclosed in the patent in suit for contacting gas in the pipe, amplifying the vibrations of it with diaphragms, and listening to the vibrations or sound waves at various places along the pipe line for the purpose of determining the location of the leak. Everything disclosed in the patent in respect to the detection of vibrations in the fluid in the pipe and the amplification of them with diaphragms for use in ascertaining the location of the leak was foreshadowed in the known and taught art. That which plaintiff essayed to teach in the patent was obvious and did not call for inventive genius.

This case does not present need to determine whether a combination of the two elements just discussed and the additional element of amplifying the vibrations by electric means and ascertaining their intensity through appropriate meters, as disclosed in figure 4 of the patent, constituted inventive genius for the reason that the alleged infringing device does not include any electric means for amplification or recordation. In other words, the added element is not found in any form in the device charged with infringement.

The decree is reversed and the cause remanded.