## AMERICAN LAUNDRY MACH. CO. v. STRIKE.

## STRIKE v. AMERICAN LAUNDRY MACH. CO.

### Nos. 1761, 1762.

Circuit Court of Appeals, Tenth Circuit.
April 10, 1939.

Drury W. Cooper, of New York City (Elbert L. Hyde and Frank R. Higley, both of Cleveland, Ohio, on the brief), for the American Laundry Mach. Co.

Carlos G. Stratton, of Huntington Park, Cal. (N. J. Cotro-Manes, of Salt Lake City, Utah, on the brief), for Louis N. Strike.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit for alleged infringement of combination patent No. 2,007,607 relating to improvements in scissors type pressing machines commonly used industrially in laundries for ironing purposes and in dry cleaning establishments for pressing purposes. George W. Johnson was the inventor. Plaintiff owns the patent by assignment from him. Claims 2, 3, 5, 6, and 8 are in issue. They are set forth in the margin. [1] The defenses are invalidity and noninfringement. The court found that the patent should be limited to a spiral or helical spring snap-acting means for urging the

[1] Claim 2. "A pressing machine, comprising relatively movable head and bed members, operating mechanism therefor, and control means for said mechanism, including spaced hand controls movable from inoperative to an intermediate position to produce operation of said mechanism and engagement approach movement of said members, and to a full operated position to maintain said members in engagement, means normally tending to move said hand controls from intermediate to inoperative position, and means governed by the relative position of said movable members for controlling movement of said hand controls from intermediate to full operated position, said control moving means being effective to maintain said controls in full operated position on movement thereto."

Claim 3. "A pressing machine, comprising relatively movable head and bed members, operating mechanism therefor, and control means for said mechanism, including spaced hand controls movable from inoperative to an intermediate position to produce operation of said mechanism and engagement approach movement of said members, and to a full operated position to maintain said members, in engagement, means normally tending to move said hand controls from intermediate to inoperative position, and means governed by the relative position of said movable members for controlling movement of said hand controls from intermediate to full operated position, said control moving means being effective to move said controls from a point of operation between said intermediate and full operated position to full operated position and maintain the controls therein."

Claim 5. "A pressing machine, comprising relatively movable head and bed members, operation mechanism therefor, and control means for said mechanism, including spaced hand controls movable from inoperative to an intermediate po-

sition to produce operation of said mechanism and engagement approach movement of said members, and to a full operated position to maintain said members in engagement, spring actuated toggle means normally tending to move said hand controls from intermediate to inoperative position, and means governed by the relative position of said movable members for controlling movement of said hand controls from intermediate to full operated position, said spring actuated toggle means being effective to maintain said controls in full operated position on movement thereto."

Claim 6. "A pressing machine, comprising relatively movable head and bed members, operating mechanism therefor, and control means for said mechanism, including spaced hand controls movable from inoperative to an intermediate position to produce operation of said mechanism and engagement approach movement of said members, and to a full operated position to maintain said members in engagement, spring actuated toggle means normally tending to move said hand controls from intermediate to inoperative position, and means governed by the relative position of said movable members for controlling movement of said hand controls from intermediate to full operated position, said spring actuated toggle means being effective to move said controls from a point of operation between said intermediate and full operated position to full operated position and maintain the controls therein."

Claim 8. "A pressing machine, comprising relatively movable head and bed members, operating mechanism therefor, and control means for said mechanism, including spaced manuals movable from inoperative to an intermediate position to produce operation of said mechanism and engagement approach movement of said members, and to a full operated position to maintain said members in engagement,

two handles from intermediate to inoperative position; that as thus limited the claims were valid; that the first type of machines manufactured and sold by defendant embodied such spring means and infringed; but that the type thereafter manufactured and sold failed to employ any such member and therefore did not infringe. The uncontroverted evidence disclosed that defendant manufactured a third type, but no findings were made in respect of it. Defendant was enjoined from the further manufacture and sale of the first type of machines or any other type containing a spiral or helical spring member tending to move the manuals from intermediate to inoperative position. Both parties appealed from the respective parts of the decree deemed to be adverse.

The apparatus weighs about one thousand pounds. It has a substantial frame on which a bed or buck is mounted. A heated iron member called the head is mounted on a two-arm pivoted lever above the bed. The pivoted arm swings up and down to bring the head into and out of ironing or pressing engagement with the work arranged by the operator on the bed to be ironed or pressed. The mechanism for the head includes an air pressure cylinder, piston, piston rod, and toggle links which connect the piston rod to the rear arm of the lever which supports the head. These are so arranged that when air pressure is admitted into the cylinder the piston rod is moved rearward which causes the lever to swing and thus bring the head downward into heavy pressure engagement with the work on the bed. The two manuals are each connected with a valve mechanism or assembly. The duplex valves are connected in series in such manner that if either is closed no fluid pressure will flow through the pipe to the cylinder. The pipe is connected with the outlet of one of the valves; the inlet to that valve is connected with the outlet to the other by means of a pipe; and the inlet to the latter valve is connected to a suitable source of supply of fluid pressure by means of a pipe. When the manuals are moved downwardly from an inoperative to approximately or substantially intermediate position the intake valves are opened and air pressure is admitted through a connected pipe arrangement into the cylinder

which moves the piston rod rearward and causes the rear arm of the lever to swing and bring the head into engagement with the work on the bed. But if the hand is taken from either manual the exhaust valve is opened, the air pressure is released in the operating cylinder, and the head moves upward and out of engagement with the bed. Stops in the form of pivoted bars are mounted in an upright position on a rock shaft underneath the manuals to prevent the manuals from being moved below their intermediate position until the head and bed are in substantial engagement. When the manuals come into engagement with the stops they cannot be moved further downward until the stops are moved out of the path of their travel. A pull rod connected with the stops extends through a collar positioned on the lever which supports the head. It has an ear beyond the collar. When air is admitted into the cylinder and the piston moves rearward causing the lever with its toggle-link connections to assume a substantially straight position, the ear on the pull rod comes into engagement with the collar on the lever, the stops are moved out of the path of the manuals, and the manuals can then be further depressed or advanced into a full operated position. The operator can feel the stops being moved out of the path of the manuals and that is called a tell-tale.

The novelty which plaintiff contends the patent brought into the art is a two-stage movement of the manuals, which (1) will cause either or both manuals to fly upward into inoperative position if released before the manuals reach the intermediate position and thus bring the head out of engagement with the bed, and (2) will depress the manuals into full operated or so-called locked position if they are released after passing the intermediate line and hold them in that position until raised by the operator. It is asserted that the merit in the invention in practical operation lies in affording the operator the option or choice of holding the manuals in intermediate position or taking the hands off them after they have passed that line and permitting the control means to depress them to a fully operated position and hold them there until the operator elects to raise them. It is said that this arrangement makes it possible for one operator to

means normally tending to move said manuals from intermediate to inoperative position, stop means for each manual, and means connecting said stop means with said operating mechanism for positioning said stop means against movement of its associated manual to full operated position, except when said head and bed members are safely closed."

operate two or three machines, that is to say while one is in locked position the operator may turn and give attention to a second or third. It is also said that the control means provide safety against the danger of injury to the hands and arms of the operator. That is accomplished by the control means making it necessary for the operator to keep both hands on the manuals until they are moved from inoperative to intermediate position and the head is brought into such substantial engagement with the bed that when either or both hands are removed from the manuals the close proximity of the head to the bed makes it impossible to place the hand between the two and thus be crushed or burned.

One question argued is whether the patent should be limited to an over-center spiral or helical spring member for operating the manuals. Stated generally, the original claims included power means for moving the head and bed into and out of engagement, control means for such power means including spaced controls actuatable from normal inoperative position to operative position and then to locked operative position, and means governed by the relative position of the head and bed for preventing actuation of such control means to locked and operated position. Patents issued to Benjamin, Daly, Davis, Ledbetter, Maury, and others were cited as references. All claims were rejected as not being patentable over either Davis, Daly or Maury; and they were rejected on the further ground of being merely functional. The applicant then cancelled all claims and submitted new ones which provided for valve operated control means for such power means including spaced controls actuatable from normal inoperative to an intermediate operative position wherein such power means would be energized to cause pressing engagement between the head and the bed and to a locked operative position wherein energization of the power means would be continued, and means governed by the operation of the power means and the relative position of the head and bed for locking the control means against movement to locked operative position. The patent issued to Gregoire was then cited as an additional reference and all claims were rejected for being incomplete and not defining the invention. The examiner stated in the communication of rejection that invention lay in the fact that the applicant had spring snap-acting means for urging the valves from intermediate position to inoperative position, and for holding them in inoperative position after they have been moved there upon the withdrawal of the locking means; that the springs were necessary in order to have a two-hand control which was believed to be applicant's intended invention; that as then defined in the claims, the structure—without the valves being urged into inoperative position by the spring pressed toggles—did not offer any utility over Benjamin or Ledbetter; and that it was old to have valves in series and spaced apart so as to employ both hands of the operator while controlling the press. Claim 9 was rejected as not patentable over either Benjamin or Ledbetter, and all claims were rejected as not patentable over Gregoire in view of either Benjamin or Ledbetter. Applicant acquiesced in the rejection, cancelled the first set of amended claims, and submitted second amended claims. In the letter submitting the second amended claims it was stated that after careful study of the references and the last official letter—the communication of rejection just adverted to— the claims were tendered in the belief that they differentiated over the references of record; and it was further stated that the claims included the element of means normally tending to move the control handles from intermediate to operative position as the examiner suggested. With minor amendments the amended claims thus tendered were allowed. Those in issue here fall into two different groups in respect of precise language concerning the energizing mechanism or agency for operating the manuals. Claims 2, 3, and 8 provide in substance means normally tending to move the manuals from intermediate to inoperative position, and means governed by the relative position of the movable members for controlling movement of such manuals from intermediate to full operated position; and claims 5 and 6 specify spring actuated toggle means normally tending to effect such control of the manuals.

The proceedings in the patent office indicate that the examiner intended to restrict applicant to spring actuated toggle means for the operation of the manuals and believed that the claims as finally allowed were thus limited. However, that is not controlling here. Where the question of estoppel is involved the proceedings transpiring in the patent office sometimes have importance, but ordinarily the scope of the grant in a patent must be determined by the claims. Resort may be had to the specifications for aid in interpreting doubtful lan-

guage in the claims or for a more particular description of the means generally stated in the claims. It is not the function of specifications to enlarge or contract the claims. They can be looked to only as an aid in ascertaining the true intent of the parties at the time the claims were submitted and allowed. Jensen-Salsbery Laboratories v. O. M. Franklin Blackleg Serum Co., 10 Cir., 72 F.2d 15; Callison v. Pickens, 10 Cir., 77 F.2d 62.

As stated, claims 5 and 6 are textually limited to spring actuated toggle means, while the broader claims 2, 3, and 8 do not specify or describe the means. But the specifications make repeated reference to spring actuated toggle means. There is little room for doubt that spring means were contemplated in all of the claims. Further, if claims 2, 3, and 8 be construed as broad enough to embrace every means normally tending to move the manuals from intermediate position to inoperative position, and to maintain them in full operative position they are functional and void for indefiniteness and uncertainty. Jensen-Salsbery Laboratories v. O. M. Franklin Blackleg Serum Co., supra; Callison v. Pickens, supra. In addition, plaintiff manufactured and sold approximately 2,000 pressing machines intermediate the issuance of this patent and the trial of the case, not one of which complied in all respects with the patent. In other words, this is a paper patent in a crowded art, not used by its owner engaged on a large scale in the manufacture and sale of such machines. It is well settled that a nonused patent positioned in a crowded art should not be aided by a broad interpretation of the claims. For all of the reasons indicated, the claims in question cannot be extended in scope beyond spring actuated means for moving the manuals from intermediate position to inoperative position, and for maintaining them in full operative position.

The next question is validity. The patent granted to Gregoire discloses a scissors type pressing machine with a frame, a stationary bed, a movable head above the bed, air pressure mechanism, a cylinder, a piston, and a piston rod connected with a lever which operates to bring the head into and out of engagement with the bed. It has a movable stop member in the path of the manual. When the manual is moved from inoperative position into intermediate position, the head is brought into substantial engagement with the bed; the stop is moved

out of the path of the manual; and the manual can then be moved further downward or depressed into full operative position. It provides what is called two-stages. The first brings the head into such close proximity with the bed that the hand of the operator cannot then be caught between the two and injured; and the second brings the head into heavy pressure with the bed. According to the undisputed expert testimony the construction disclosed in the patent is inoperative with the ports and passages in the rotary valve arranged in the manner described in three of the diagrammatic figures, for the reason that the first stage of valve movement fails to admit fluid pressure in the right cylinder; that instead it admits pressure in the wrong cylinder and when the press closes no force is made available to move the stop out of the path of the manual, with the result that the manual cannot be further depressed through its second stage of motion to full operated position. But the further undisputed expert testimony was that the only change necessary to overcome the defect is to loosen two screws and turn the valve disk slightly more than half a turn one way or slightly less than half a turn the other way and then tighten the screws again. Such a minor infirmity in detail of construction, easily susceptible of correction through the exercise of mechanical skill without the exercise of invention, does not prevent an earlier patent from constituting anticipation. Pickering v. McCullough, 104 U.S. 310, 26 L.Ed. 749; Van Epps v. United Box Board & Paper Co., 2 Cir., 143 F. 869; Sandusky Foundry & Machine Co. v. De Lavaud, 6 Cir., 274 F. 607.

The Gregoire patent does not embody an overcenter snap-acting member. But patent No. 1,771,476 issued to Adams, and patent No. 1,929,484 issued to Davis, each, disclose such mechanism. And the Gregoire patent embodies single-hand control but two-hand control is admittedly old. It was taught in patent No. 1,167,475 issued to Benjamin, and patent No. 1,657,539 issued to Ledbetter. The patent in suit is no more than the bringing together of the elements disclosed in the Gregoire, Adams, and Davis patents, and the duplication of the single valve and manual as taught in the Benjamin and Ledbetter patents. To do that required merely the exercise of mechanical ingenuity. No inventive genius was involved. It is well settled that an improvement in apparatus or method to·be patentable must be the result of invention. The product of the exercise of mechanical skill without inven-

458

tive genius is not patentable. Altoona Publix Theatres, Inc. v. American Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Fisher Governor Co. v. C. F. Camp Co., 10 Cir., 40 F.2d 341; Callison v. Dean, 10 Cir., 70 F.2d 55; Gilmore v. Smith, 10 Cir., 98 F.2d 874.

The conclusion that the claims in suit are invalid for want of patentable novelty renders it unnecessary to discuss the contentions advanced respecting the question of infringement.

The decree is reversed and the cause remanded with direction to dismiss the bill.