## SHELL et al. v. ELECTRIC AUTO LITE CO.

### Civ. No. 8065.

United States District Court
E. D. Michigan S. D.

April 24, 1951.

Pillon & Pillon, and Gregory M. Pillon, all of Detroit, Mich., for plaintiffs.

John A. Blair and Harness, Dickey & Pierce, all of Detroit, Mich., for defendant.

PICARD, District Judge.

This is a suit for infringement of plaintiffs' patent No. 1,968,225 pertaining to an invention and improvement in spark splugs. It contains two claims which are nearly identical and read as follows:

"1. A spark plug of the class described comprising: a metallic shell having a bore formed therethrough, said shell having intermediate the ends of said bore an engagement shoulder forming portion; an in-

sulating core in engagement with said shoulder; means for retaining said core in engagement with said shoulder; an electrode projected through said core, the portion of said electrode within said core being coiled, said core being threaded for the reception of the coil portion of said electrode.

"2. In a spark plug of the class described, a metallic shell having a bore formed therethrough; an insulating core mounted in said bore; means for retaining said core in said bore; and an electrode projected through said core, the portion of said electrode within said core being coiled, said core being threaded for the reception of the coiled portion of said electrode".

Defendant denies that its resistor spark plug infringes or that plaintiffs' plug is patentable. On the contrary it alleges that plaintiffs' spark plug is only a combination of old elements performing or producing no new nor different function nor operation than heretofore produced or performed by them. Defendant furthermore alleges that plaintiffs have only a paper patent and that their plug is inoperable.

Plaintiffs' plug is a metallic shell within which there is an insulated porcelain core threaded to receive a coiled electrode and plaintiffs claim that defendant's plug uses the same device.

Let us then discuss the coiled electrode, which, as part of a spark plug, is not new. In fact plaintiffs admit that the Schneider (German) No. 409,871, the Donat No. 1,-290,121 and the Boisselot (French) 570,-367 patents, all part of the prior art, have coiled electrodes. Plaintiffs' patent, however, has the aforesaid threaded or grooved porcelain and they claim that when the coiled electrode is fitted within threads of the porcelain it results in many advantages not before found in any prior art because of the attendant cooperation between the coiled electrode and the threaded porcelain.

Our first question then is to determine whether defendant's spark plug has a coiled electrode and our answer depends upon just what is meant by the term. Plaintiffs insist that every part of the plug that carries the current from ingress to egress is "the electrode" while defendant maintains that the electrode is only that part of the plug where the spark jumps the gap resulting in or causing the ignition.

Webster's New International Dictionary (Second Edition), unabridged, defines an electrode as:

"either terminal of an electric source";

"either of the conductors by which the current enters and leaves an electrolyte";

"may be a wire, a plate or other conducting object."

We are inclined to conclude that it is a term that has been loosely used but that strictly speaking it is that portion of the conductor where the electricity flows from one state of matter to another and that when this carrying agency within the plug is all one from terminal screw to gap, it is useless to differentiate between whether the entire one piece is the electrode or just the point from which electric current enters or leaves.

Examining the plugs involved, therefore, we learn that plaintiffs' and mentioned prior art plugs, except Schneider's, all have but one conductor from terminal screw to gap. Defendant's does not. Defendant's plug has a combination of elements both carrying and "resisting" the electricity. First there is the contact spring which is coiled and fits into a chamber of porcelain that is threaded.

This is the part that allegedly infringes.

Then comes the resistor made of a ceramic and carbon; and then that part of its plug that defendant insists is the "electrode" because there is where the spark is made.

Of course the entire assembly carries electricity but so does the terminal screw, the ignition cable and so on back through the ignition coil. Surely the designation "electrode" as a unit of the electrical system must begin and end some place along the course by which the electricity travels. And so we hold that defendant's spring is not truly part of the electrode in defendant's plug. It merely serves as a conductor of electricity just as the cable which is fastened to the terminal screw. Furthermore, this spring must move axially

in the bore to compensate for variation in the length of the other parts of the plug due to temperature changes during use.

But even if we do consider the spring and resistor as part of the electrode, we must find that plaintiffs are circumscribed by their own claims which are entitled to a narrow construction at most.

According to the file wrapper plaintiffs were granted a patent when they revised their claims to cover a "core being threaded for the reception of the coiled portion of said electrode".

■ That was their plug's controlling feature and we hold that they are estopped from urging a broader construction. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236; Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199; Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736.

Defendant's spring does not fit into the threads of the porcelain.

■ But function and construction are more important than terminology and in order that there be infringement both devices must operate the same. Holley v. Goldner Sales Co., 6 Cir., 107 F.2d 494. Here the plugs are not constructed the same nor do the supposedly similar parts function the same.

Defendant's grooves in the porcelain run one way, the coils of defendant's spring run the opposite. Plaintiffs' coil and threaded porcelain are aimed to be received one by the other. On the contrary, defendant's thread and coil ordinarily would repel each other.

The evidence is uncontradicted that plaintiffs' plug won't work unless the coiled electrode is fitted into the threaded porcelain—while defendant's plug won't function if the coil does fit into the porcelain grooves. Plaintiffs avoid—defendant seeks —displacement.

The proofs show that plaintiffs' coil is larger than the bore—while defendant's spring is smaller than the bore.

Enlarged pictures of five defendant's plugs did show two plugs where there was a slight penetration of one or two coils of the spring into the threaded part of the porcelain but not to accomplish the results claimed for plaintiffs' plug and the proofs were convincing that when the plug became heated the added expansion, if any, would only be infinitesimal.

The functions of defendant's spring and oppositely threaded grooved porcelain differ considerably from the claimed function of plaintiffs' electrode and porcelain— which is to transfer heat from the electrode to the insulating threaded core where the grooves provide a larger area for cooling and increase the intensity of the spark— the heat advantage incidentally not mentioned in the patent and one that finds as much counter-proof by defendant which insists that the capacity discharge of the electrode is lessened—not increased.

There is no apparent reason why defendant's plug should require dissipation of heat from the spring, for it is made of stainless steel which will withstand a temperature of 900 degrees F and it is obvious from the testimony that the temperature at the point where the spring is located never closely approximates 900 degrees F.

■ So assuming for the moment that plaintiffs' patent is valid, there can still be no recovery as it is not infringed by defendant's plug. Infringement is a question of fact, Stilz v. United States, 269 U.S. 144, 46 S.Ct. 37, 70 L.Ed. 202; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805; Continental Paper Bag Co. v. Easter Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L. Ed. 1122 with the burden of proving same resting with plaintiffs. Holley v. Goldner Sales Co., supra.

Furthermore in proving infringement, it is the claims which measure the grant to the patentee and there is nothing in the claims about what the patent will accomplish. As the court stated in Graver Tank Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 539, 93 L.Ed. 672: "While the cases more often have dealt with efforts to resort to specifications to expand claims, it is clear that the latter fail equally to perform their function as a measure of the grant when they overclaim the invention."

■ We come then to the question of the patentability of plaintiffs' device and we conclude further that if the physical difference and function between defendant's spark plug and that of plaintiffs' are not sufficient to take it out of the realm of infringement, then there is nothing patentable about plaintiffs' spark plug.

In this connection let us inquire into the elements necessarily present in a combination patent such as this, as laid down in recent Supreme Court decisions.

In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 130, the court stated: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans."

And in Air Devices, Inc., v. Air Factors, Inc., D.C., 94 F.Supp. 819, 820, the court, quoting the principle laid down in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 states: "is also the warning * * * that a device must not only be new and useful, but must also amount to invention."

We quote from the Cuno Corp. case, 314 U.S. at pages 90 and 91, 62 S.Ct. at pages 40 and 41 the following passages which have much bearing here:

"It has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled" and

"That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain."

Assuming that the plaintiffs' plug increases the transfer of heat and that it is something new and useful, it still appears to us that it falls far short of being an invention or discovery.

Is it not true that in every spark plug the electrode, whether it be coiled or straight as in defendant's regular plug, transfers some heat to the insulating core surrounding it? Is it invention merely to increase the area in which this heat might be dissipated? We think not. If it does the idea was first disclosed by Schneider. It seems to fall clearly within the principle of the Cuno Corp. case, supra, that it is but the work of a mechanic skilled in the art. It adds nothing to the sum of useful knowledge.

What advantages are to be obtained from plaintiffs' patent or what is in fact added to the scientific knowledge or useful arts that was not already known at that time? The claims do not state and what is stated in the specifications was not proved while none of the alleged advantages of plaintiffs' plug result from the co-activity between the grooves and the opening.

As a matter of fact we learned from the proof that when plaintiffs made their plug they filled the center space where the coiled electrode fitted into the threaded porcelain with cement chiefly to hold the electrode in position. The alleged great advantage of increased heat area was completely ignored and when they had done this they had a plug that was a duplicate of the Donat patent. So if defendant's plug infringes, then, in our opinion, plaintiffs' infringes the prior art, particularly. Donat and Schneider.

In order for plaintiffs to have a patentable article they must prove that their spark plug will work with their coiled electrode fitting—but not necessarily snugly—into the grooves of the porcelain but practically entirely surrounded by air.

■ The burden of proof is also on plaintiffs to prove existence of advantages inherent in both structures and that they flow from unique relationship between the thread groove and the coil. This must be disclosed in the patent, found in defendant's structure and not found in prior art. Plaintiffs have failed to sustain this burden.

So far plaintiffs' plug is on paper. Plaintiffs admit that some changes are necessary

but say that these are minor. Perhaps so; but there was no showing that a reconstructed plug would work.

It is therefore our conclusion that not only is the plaintiffs' patent invalid, but that even if we were to hold that it is valid, defendant's spark plug does not infringe.