Ralph L. TWEEDALE, Plaintiff,
v.
SUNBEAM CORPORATION,
Defendant.

No. 13945.

United States District Court
E. D. Michigan, S. D.

Oct. 16, 1956.

Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich., for plaintiff.

Hill, Lewis, Andrews, Granse & Adams, Detroit, Mich., George R. Clark, Neil M. Rose, M. Hudson Rathburn and Walther E. Wyss, Chicago, Ill., Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for defendant.

PICARD, District Judge.

Action by plaintiff for infringement of patent No. 2,110,748. This defendant denies, and claims further that letters patent should never have been issued since plaintiff's device won't work or if it does it is not an invention over the prior art. In addition defendant asserts improper venue and lack of jurisdiction.

Findings of Fact

Questions of jurisdiction and venue were raised long before trial and decided adversely to defendant at which time an unsuccessful attempt was made to reverse the ruling by mandamus. Sunbeam Corporation v. Picard, 6 Cir., 227 F.2d 596. We then held and now hold that the subsidiary is the alter ego of defendant and satisfies, insofar as these proceedings are concerned, the jurisdictional and venue requirements of Sections 1694 and 1400(b) of Title 28 U.S.C.

Since no other evidence affecting these questions was introduced at the trial, we now direct our attention to the merits, to-

wit: does defendant's toaster infringe upon plaintiff's?

The controversy arises over devices used in plaintiff's and defendant's bread toasters which automatically cause the bread to "pop up" when the desired degree of "cooking" is attained. Plaintiff's patent, issued March 8, 1938 and expiring March 9, 1955, claims to attain this result by a photo. electric cell, commonly called an "electric eye". Although no model has ever been constructed plaintiff says that his toaster operates as follows: The bread slice is first inserted and then pulled down by means of a lever to a position adjacent to the heating units. While so held the operator must then adjust a screw which indicates the tripping point of the then untoasted bread by a slight click. At this point the bread carriage is released and the adjusting screw is turned in an opposite direction a quarter, half or full turn; whatever experience has taught will produce the desired color of the toast. While this is being done the electric eye receives the light rays that are reflected from the bread and as the latter turns brown the amount of light reflected therefrom to the electric eye is reduced. This results in a corresponding reduction of the current that flows through the electric eye and when the toast reaches the desired degree of brown (determined by setting of the adjustment screw) the drop in current flowing through the electric eye causes a relay to be released and the bread to "pop up" properly toasted. If both blind and deaf it would be rather difficult, if not impossible, for the operator to get results.

The Sunbeam toaster works automatically; is set when it leaves the factory and all you have to do is push down the proper lever "light", "medium" or "dark" with which you could easily become acquainted by verbal or manual instructions.

Sunbeam is covered by several patents but the device employed therein to terminate the toasting cycle is covered chiefly by Koci patent 2,667,828 which was issued February 2, 1954. This is the only feature of the Sunbeam toaster with which we are concerned in the present litigation, narrowing our consideration to whether defendant's patent infringes plaintiff's automatic terminating device. The real difference lies in the "electric eye" of the plaintiff vs. defendant's "bimetallic element" and while plaintiff admits that defendant's toaster does not utilize the electric eye in the strict sense of those words, he claims that the "light sensitive element" disclosed in his patent, and used to automatically terminate the toasting cycle, is broad enough to include the "bi-metallic element" or the thermostat utilized by defendant's toaster to achieve the same results. Plaintiff claims that in addition to the foregoing, and of greater importance in determining the question of infringement, is the fact that defendant's bi-metallic element, as does plaintiff's electric eye, utilizes radiation reflected from the toasting surface as the controlling factor in detecting the point to stop the toasting operation. Both statements are denied by defendant which, in turn, insists that plaintiff is limited by the claims of his patent to a "light sensitive element" solely responsive to the color of the bread being toasted which does not include defendant's bi-metallic element; and furthermore that Sunbeam's toaster's thermostat responds to heat emitted from the bread and does not operate in response to color of the bread nor to reflected radiation as does plaintiff's device.

We think these two issues may be stated as follows:

(a) Does defendant's thermostat, or bi-metallic element, operate in response to either the surface color of the bread or radiation reflected from its surface; and

(b) Are the words "light sensitive element" broad enough to include the thermostat used in defendant's toaster?

As to (a), numerous experiments were performed with the Sunbeam toaster in the presence of the court, the results of which conclusively proved to us that defendant's thermostat does not operate in response to the surface color of the bread.

And proof establishing that defendant's thermostat operates in response to emitted radiation within the invisible spectrum rather than to reflected radiation within the visible spectrum was just as convincing and conclusive. Here, in fact, men admitted to be experts testified that:

(1) Non-metallic solids such as bread have a magnitude of emissivity in the neighborhood of from 90 to 95 per cent if radiation in the infra-red spectrum (heat) with a temperature range between that of a normal room and 2,000 degrees Fahrenheit is focused upon their surface;

(2) The temperature of heating elements in bread toasters is between 1,400 and 1,600 degrees Fahrenheit while the toasting operation is in progress and the radiant energy produced is almost entirely within the infra-red or invisible spectrum while that within the visible spectrum is quite negligible or insignificant; and

(3) Insofar as the reflective quality of a substance is concerned, it is either a diffuse or a specular reflector. The latter has a high reflectivity while the former has a low reflectivity.

Bread falls in the category of substances which have a low reflectivity.

In addition, the experts also testified that since emissivity increases as temperature rises and reflectivity diminishes as the surface grows darker, the Sunbeam toaster must operate in response to radiation in the invisible spectrum emitted from the bread slice and not from visible reflected radiation. So in view of all testimony we find:

(a) Of the total amount of radiated energy which hits the thermostat of defendant's toaster 95 per cent is emitted from the bread slice and is within the infra-red or invisible spectrum while only 5 per cent is reflected radiation; and

(b) The thermostat in defendant's toaster operates in response to heat emitted from the surface of the bread.

We come now to the second question (b) to-wit—are the words "light sensitive element" used in plaintiff's patent claims, when properly construed, broad enough to encompass defendant's thermostat? While determination of this issue depends somewhat upon what is meant by "light sensitive element" and for that reason may be characterized as a question of fact, the primary issue is one of construction and can best be dealt with in our conclusions of law.

### Conclusions of Law

As stated in our findings plaintiff's patent has never enjoyed commercial success. In fact no working model has ever been constructed and it is therefore among that class commonly referred to as "paper patents". The term (paper patent) is no doubt objectionable to the patent holder, but has nevertheless received recognition by the courts. Cerruti v. Stinson Aircraft Corporation, D. C., 23 F.Supp. 387; Dillon Co. v. Continental Supply Co., 10 Cir., 98 F.2d 581. Furthermore the term has significance in that very often the question of infringement is resolved not on the basis of whether the alleged infringer has identically the same thing as the complaining patentee, but whether it has the equivalent thereof. In "paper patents" the courts have uniformly held that while the doctrine of equivalents is applicable even to "paper patents" the claims of such a patent must be narrowly construed. American Laundry Mach. Co. v. Strike, 10 Cir., 103 F.2d 453; Modern Products Supply Co. v. Drachenberg, 6 Cir., 152 F.2d 203. See also Cerruti v. Stinson Aircraft Corporation, supra.

With this rule of construction firmly in mind we turn to the main issue, to-wit: is defendant's thermostat the equivalent of plaintiff's "light sensitive element" when considered along with the other language of the claims and given a narrow construction?

We think not.

Webster's Unabridged Dictionary, Second Edition defines light as

"the radiant energy which, by its action upon the organs of vision, enables them to perform their function

of sight;—more accurately called *luminous energy"*. (Italics ours.)

True, Webster also states that by giving the word "light" an extended meaning it includes invisible or infra-red energy as well which definition, of course, could be construed as favorable to plaintiff. However, there is a compelling reason why "light sensitive element" as used in plaintiff's patent claims cannot be so extended. An examination of plaintiff's patent file wrapper, which was introduced as an exhibit, shows that plaintiff first claimed his invention embodied

"means responsive to a changing condition of the food signalling the occurrence of that condition".

The examiner rejected that claim as having been "fully met" by the prior art (Hurxthall No. 1540628) and persisted in his rejection in face of plaintiff's attempts to distinguish his patent from the prior art. This necessitated plaintiff changing his claim which he did by asserting that he had a "light sensitive element responsive to the surface color of the bread being toasted."

When plaintiff did this, in getting around the prior art, we believe and hold that Tweedale limited his patent. We so hold principally because all experts thoroughly familiar with the phenomena of radiant energy and terms used to describe it, testified that when the word "light" is used in connection with color it (light) is limited in its meaning to radiant energy within the visible spectrum; that the words "light sensitive element" are not considered in scientific circles as being descriptive of thermostats or bi-metallic elements and are not normally applied to them.

■ It must be remembered that plaintiff in the case at bar is an engineer, an attorney and at one time worked as an examiner in the patent office. In the opinion of this court he well knew the limited meaning of "light sensitive element" and deliberately used those words to secure allowance of his patent over the prior art. He is now estopped from urging that those words be given a broad-er construction so as to include defendant's thermostat as an equivalent within their meaning. Shell v. Electric Auto Lite Co., D.C., 98 F.Supp. 462. See also Universal Oil Products Co. v. Globe Oil & Refining Co., 7 Cir., 137 F.2d 3. In the latter case the court said at page 6—

" * * * that words will be given their ordinary and accustomed meaning unless it appears that the inventor used them differently."

Let us further develop this thought and examine plaintiff's patent to learn if it contains any wording equivalent to the operation of defendant's patent not on a broad interpretation, however, but on a narrow one as is the admitted rule because since defendant's product does not operate on an electric eye the question is do the words "light sensitive element" of plaintiff's patent strictly interpreted, cover infra-red?

We hold they do not.

■ The Tweedale patent would have to be very broadly construed in order to bring it within the claims of Sunbeam. Just as Tweedale was able to get his patent over Hurxthall on distinction between heat and light, Sunbeam was able to get a patent over Tweedale evidently on the same grounds and so it is very apparent that those trained in patent law could easily distinguish what is even apparent to a layman. Tweedale was not depending upon infra-red or heat at all. His patent is for light while Sunbeam is for heat. And the words "light sensitive element" were directed to light as commonly understood. Plaintiff should not now be permitted to confuse the issue.

For these reasons we hold defendant's patent does not infringe.

Incidentally, there were times during the course of the trial when it appeared that plaintiff was claiming that what the Sunbeam toaster had was not an "equiv-alent" but the identical same thing as the Tweedale toaster. We have explored that possibility and have determined that even though it were claimed to be the same and not an equivalent, plaintiff has failed in his proof simply because no proof was;

nor we believe could be, forthcoming that could possibly demonstrate that these automatic toasters (Sunbeam and Tweedale) would work the same. As a matter of fact, at another point in the testimony plaintiff insisted that these devices were just as opposite as they could be.

Summing up, we determine that there are four reasons why plaintiff cannot recover—

First, plaintiff has a "paper patent" pure and simple. No one to this day has built a Tweedale toaster, even a model, as called for by the patent specifications, and in applying the law of equivalents to a paper patent the claims thereof must be narrowly construed; American Laundry Mach. Co. v. Strike, supra.

Second, there is no evidence that a toaster built as covered by the Tweedale specification would work; in fact the evidence is all to the effect that it will not and this comes from testimony of men whom plaintiff himself admits are experts worthy of belief. As pointed out by witnesses, if the Tweedale toaster got too much light, say by someone turning on a bulb or putting up a shade, then the electric eye wouldn't work and the bread would burn, while if no light reached the electric eye at all the bread should "pop up" before the toasting was well begun;

Third, defendant has a "heat" rather than "light" toaster and if the "light" feature in plaintiff's toaster is inconsequential he has no patent at all because the "heat" feature was found in the prior art among them the Hurxthall, Forbes and Harris toasters; and

Fourth, the most controlling reason why plaintiff should not recover is that this court has found the fact to be that plaintiff's toaster is controlled by "reflected light". True some heat may aid in the tripping of the pop-up mechanism but the entire foundation of plaintiff's patent and his claims, up to the introduction of evidence by defendant, was to the effect that he was discussing "light" within the visible spectrum and not "light" as contemplated by infra-red

heat. His whole patent is based upon the idea and theory of reflected light from the surface of the toast and if his toaster will function that is the theory it has to use. On the other hand, defendant's toaster works fundamentally and practically by heat emitting from the surface of the toast. There may be some reflected light but if so it is inconsequential and infinitesimal compared to heat.

For the reasons given we hold for defendant. A judgment in accordance with this opinion will be prepared for our signature.