### CONTINENTAL MACHINES, Inc., v. GROB et al.

### GROB et al. v. CONTINENTAL MACHINES, Inc.

### Nos. 12506, 12507.

Circuit Court of Appeals, Eighth Circuit.

Aug. 4, 1943.

a belt and carried continuously around the two vertically spaced pulleys in the place of the old flexible saw blade, and metal work is pressed against the downward moving abrading surface instead of wood. The defendant began manufacturing its continuous filing machines in March, 1935, and the plaintiffs brought a suit for patent infringement. After a trial on the merits, the court decided against the plaintiffs and dismissed their bill for want of equity.[1]

Thereafter plaintiffs secured another patent issued to them and also acquired a patent issued to one Anderson, and have, in this action, again sued defendant for patent infringement in respect to its same machines.[2]

On the trial of the merits, plaintiffs relied on claims 3, 7, 9, 13, 15 and 19 of the patent to Grob, et al., No. 2,192,788, March 5, 1940, and claims 2, 3 and 4 of the patent to Anderson, No. 1,836,741, December 15, 1931. The trial court decreed on its findings and conclusions that the specified claims of said Grob, et al. patent are invalid, null and void, and also that claims 7 and 9 of said patent are not infringed by defendant's machines. It decreed further that claims 2 and 4 of the Anderson patent are invalid but that claim 3 of said patent is valid and infringed.

Plaintiffs Benjamin Grob et al., have appealed from that part of the decree holding claims 3, 7, 9, 13, 15 and 19 of the Grob, et al. patent invalid and claims 7 and 9 thereof not infringed, and holding claims 2 and 4 of the Anderson patent to be invalid. The defendant, Continental Machines, Inc., appeals from the part of the decree sustaining and adjudging infringement of claim 3 of the Anderson patent. We have a record of some eight hundred pages, six briefs and the benefit of oral arguments, all of which have been studied and considered. Much of the bulk has resulted from the great pains taken by counsel to segregate the kernel and meat of what has to be decided from the mass of material that needs only to be rightly understood and applied.

Plaintiffs' Appeal. There is no claim that plaintiffs or Anderson originated the

Ralph W. Brown, of Milwaukee, Wis., for Benjamin Grob et al.

Ira Milton Jones, of Milwaukee, Wis. (Daniel F. Foley, of Minneapolis, Minn., on the brief), for Continental Machines, Inc.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The plaintiffs began in 1931 to make filing machines which operate much like the old common band saw, except that segments with file surface are attached to

---

[1] The suit was brought in Milwaukee against defendant's customer, but defendant intervened and took over the defense.

[2] Plaintiffs' wives, who were not in the former suit, have been included in this suit as parties plaintiff by amendment to the petition but the record does not indicate when they obtained their interest. It is compatible with acquisition subsequent to the Milwaukee suit and they have asserted no distinction between their own and their husbands' position.

idea of a filing machine with movable work table on which metal work is moved against a continuous file trained over vertically spaced wheels or pulleys and passing down through the table in a straight line. The general idea of such a machine is old and plainly taught in early patents in the same art and in the kindred arts of sawing wood with a continuous band saw or abrading it with a continuous sandpaper band. But it is necessary to maintain the part of the filing surface of a continuous filing machine which is brought in contact with metal work in strict alignment without backward or lateral spring of the file element from the thrust of the work, and the patent claims relied on by plaintiffs relate only to claimed improvements in combinations in the back up and guiding elements and the means for adjustment thereof for work of different size or shape, including inside work.

In plaintiffs' machines the continuous file carrier is supported against backward spring by a "back up" narrower than the file blade and which extends vertically through the work table. The "back up" is attached at one end below and at the other above the work table. There are also guides below and above the table which embrace the edges of the carrier and file elements and preserve the alignment against lateral pressures. The upper attachments of the back up and guides can be manually adjusted to higher or lower positions as required by the work, and parts may be detached to permit adjustments for inside filing. The ends of the file segments instead of being square are bevelled off[3] so that the ends overlap each other when adjacent.

The defendant admits that its filing machines include back up and guide elements and means to make adjustments required by the work, and that they read on certain of plaintiffs' patent claims, but its position is that the conceptions are old and the particular construction in controversy involved no more than ordinary mechanical skill. The contrast between the forms of plaintiffs' and defendant's structures shows plainly that defendant did not copy plaintiffs' machines.

Plaintiffs' Patents. Four patents have been issued to the plaintiffs in addition to the one acquired by them. Grob, et al., No. 1,958,477, application April 3, 1931, issued May 15, 1934; original No. 1,949,742, application May 22, 1930, issued March 6, 1934 (surrendered on Reissue); Reissue Grob, et al., No. 19,999, application March 2d, 1936, issued June 9, 1936; Grob, et al., No. 2,192,788, application September 13, 1933, amended March 21, 1936, issued March 5, 1940; Anderson, No. 1,836,741, application July 5, 1928, issued December 15, 1931.

In the Milwaukee suit the plaintiffs relied on Grob, et al., Reissue No. 19,999, which was based on Grob, et al., No. 1,949,742, applied for May 22, 1930, issued March 6, 1934. The Reissue discloses a back-up for the file which is attached below the work table and extends up through the table without support for its upper end, and plaintiffs at first made their machines in that way but soon improved them with the support at the upper end. They relinquished the original patent and obtained the Reissue, No. 19,999 with one of the objects, as found by the Wisconsin court, to cover defendant's structure, of which they were then fully apprised. The Anderson patent was among the patents upon which the Wisconsin court found the Reissue No. 19,999 invalid. The claims of the Grob, et al. patent No. 2,192,788 which plaintiffs now rely on, referred to as guide mounting claims, were added to their patent application of September 13, 1933, by amendment made in August, 1935.

The record shows that the trial court made thorough and careful study of the patents in suit, the patent office proceedings, the prior art, including kindred art and all relevant structures, and set forth the results clearly and in detail in the findings and conclusions and the written opinion filed with the decree. We think the analysis and reasoning of the court fully illustrate and sustain its findings that the relied on claims Nos. 3, 7, 9, 13, 15 and 19 of the Grob, et al. patent No. 2,192,788 [sued on] do not constitute invention over the prior patent to Bein No. 833,726; Moar No. 893,186; Heinonen, No. 1,295,496; Grob, et al., Reissue No. 19,999; Meyer, British, No. 221,807; and Kayser, German, No. 119,998. 2. that the claims Nos. 7 and 9 of the Grob, et al. patent No. 2,192,788 are not readable upon machines manufactured and sold by

---

[3] The adjacent ends of the successive files 13 are disposed diagonally in the opposite direction, across the path of travel of the file faces.

defendant and defendant is not chargeable with infringement of said claims.

■ The court included Grob, et al. Reissue No. 19,999 among the patents over which the claims of the patent in suit do not constitute invention. Plaintiffs argue that the inclusion of the Reissue patent was improper because the Reissue patent and the patent in suit were co-pending in the patent office on application of the same inventors. But the court pointed out that the claims of the Reissue patent were asserted and relied on by plaintiffs and tried out in the Milwaukee suit and the adjudication of their invalidity was final. That decree settled "that defendant can now use a machine employing the alleged improvements of the Grob Reissue patent without infringement * * * in so far as the defendant is concerned the Reissue patent is public demesne * * * if infringement should be sustained herein as to the claims in issue in the patent in suit, in absence of patentable novelty, plaintiffs would circumvent that which has been set at rest between the parties." We think the court was not in error but properly included the Reissue patent in its consideration of prior art.

■ In their attack upon the court's finding of invalidity and non-infringement of claims 7 and 9 of the patent in suit, which relate to the overlapping ends of the file segments of plaintiffs' machine, plaintiffs stress the novelty of the feature in combination. In itself it is old art, exactly pictured in early patents pointed out by the court, but the insistence is upon new usefulness in combination. We think the court did not err in finding upon specific comparisons that the use in the combination disclosed in the patent sued on is likewise old. Defendant's machines, as stated, do not employ the device. The conclusion that claims 3, 7, 9, 13, 15 and 19 of the Grob, et al. patent No. 2,192,788 are invalid and that claims 7 and 9 thereof are not infringed, should be sustained.

The Anderson patent acquired by plaintiffs and now sued on, relates to a machine for filing metals, but as stated in the application, it had within its purview "to substitute for the filing elements 32 other instruments designed for abrasive and buffing purposes." For the abrasive, carborundum or the like abrasive grits were suggested. The patent was for improvements upon a continuous filing machine, and as the trial court observed, "What Anderson has done in [the claims 2, 3 and 4, upon which plaintiffs rely] is to develop the back-up and file guide for use on continuous filing machines. Claims 2 and 3 include a back-up guide with means for embracing the edges of the carrier so as to maintain the same for proper presentation of the work." Claim 4 includes the use of treating elements (including a file, a carborundum grit abrader or a buffer) mounted on the carrier and each affixed thereto in the middle so as to permit flexing of the carrier as it travels about the pulley wheels and to enable the elements to break joint with each other. There is a slot in the element co-acting with rivets in the carrier to preserve the parallel alignment.

We think the trial court's opinion clearly demonstrates that claims Nos. 2 and 4 of the Anderson patent, No. 1,836,741, and each of them, do not constitute invention over the prior patents to Bein, No. 833,-726; Moar, No. 893,186; Heinonen, No. 1,295,496; Grob, et al., Reissue No. 19,-999; Meyer, British, No. 221,807, and Kayser, German, No. 119,998, and having considered the arguments in opposition, we see no good purpose to be served in repeating the demonstration here.

Claim 3 of the Anderson patent[4] reads, word for word, the same as claim 2, which the court showed to be old and lacking invention, except that in claim 3 there are added to the words of claim 2, concluding words as follows: "and means for affording relative adjustment of the guiding means with respect to the work support to

---

[4] Claim 3. "In a machine of the class described, the combination with a driving wheel and a driven wheel, of a flexible carrier supported by said wheels, a series of treating elements mounted on said carrier to permit flexing of the carrier in its travel about said wheels, a work support adjacent to the path of movement of said carrier for sustaining the work in its presentation to the treat-

ing elements, means for rigidly supporting each of said treating elements in its passage across the face of the work against pressure of the latter in its presentation to the treating element, said supporting means including guiding means for embracing the edges of the carrier and treating elements to maintain the same for proper presentation to the work."

vary the supporting relation of the guiding means to the passage of the treating elements across the face of the work."

When the continuous filing machines are looked at in the drawings and examples, it becomes obvious that the filing elements of such machines can not be let to run loose, like power transmission belting, in the space between the pulleys where the work is positioned. They must there be guided and supported against the thrust of the work and the closer the support is to the part on which the thrust comes, the more rigidly it will stand up. There can be and is no claim of novelty or invention in the general idea of so supporting it, and inasmuch as pieces of work will vary in size and shape, it would seem equally obvious that there should be means to adjust the location of the supports to fit the work.

It appears from study and comparisons of the old patents above cited that none of them does specifically claim invention in respect to means for making such necessary adjustments; but neither does it appear in all of the other patents that the back up and guiding elements were to be cast integrally into the frame of the machine or confined to one position, and certainly none of the earlier inventors thought of limiting their disclosures to machines that would work only on some material of exactly defined shape and size or that would not accomplish inside work. The exact height for the fastening of back-up and guides above the work table is not specified because the proper height would necessarily depend on the work and the detail of making the parts vertically adjustable would be easily within the skill of mechanics. Gillaspy patent No. 1,474,255, November 13, 1923, shows how to do it with the back-up and guides there illustrated, and in the gist of it Anderson slides his elements up and down upon spindles (preferably hexagonal) and fastens them at the desired elevation with set screws about as Gillaspy did, and certainly without employing inventive genius.[5] There was no invention in the general idea of providing for vertical adjustment, and "Mere adjustability has often been held not patentable, and will seldom be such", Kalamazoo Loose Leaf Binder Co. v. Wilson Jones L. L. Co., D.C.,

286 F. 715, 720; Peters v. Hanson, 129 U.S. 541, 9 S.Ct. 393, 32 L.Ed. 742; Smyth Mfg. Co. v. Sheridan, 2 Cir., 149 F. 208; Stevens v. Rodgers Boiler & Burner Co., 6 Cir., 186 F. 631; Houser v. Starr, 6 Cir., 203 F. 264, and we are certain that there was nothing patentable in Anderson's disclosure of means. The trial court noted that the drawings of the Anderson patent depict "a rather complicated arrangement" to achieve the adjustment, whereas defendant achieves its adjustment feature in a much more simple and direct manner and dispenses with many of the rather cumbersome arrangements devised by Anderson in this regard. There was no invention in the adjustment which Anderson taught and we are convinced that claim 3 relied on discloses no invention, either in the adjustment means or in their combination with the other old elements.

The insistence here, as in so many patent cases, is on the combination character of claim 3 and on the co-acting of the old elements to justify the patent monopoly. But we find no merit in it. There are simply old elements to back up and guide the file. Their position during work is left to be fixed by the requirement of the work in the old patents and this claim for adjusting means adds nothing but what any mechanic would suggest; namely, to adjust them in position as the work requires.

The trial court's decree sustaining claim 3 of Anderson was rested upon the asserted novel use in the combination as a whole "while there may not be present a spark of inventive genius in that which he [Anderson] taught." We feel certain that the ruling was erroneous. No patent monopoly may be granted to those who do not invent or teach new and useful art. According full recognition to the weight to be given the conclusions of the patent office and of the trial court as we are required to do, our duty is nevertheless to deny patent monopoly where, as in this case, we are convinced there was no invention.

The decree of the trial court is affirmed in all respects except that part sustaining claim 3 of Anderson is reversed. The cause is remanded with direction to dismiss the plaintiffs' complaint for want of equity.

---

[5] It would be gross imposition to set out the extremely long, involved description of the adjustment means in the patent application, but for complete description that must be read, at least lines 1 to 130 on page 3, and 1 to 19 on page 4.