SPRING–AIR CO. v. RAGAINS et al.

Civ. A. No. 1268.

United States District Court
W. D. Michigan, S. D.

Jan. 29, 1951.

Robert E. Woodhams, Peter P. Price and Laurence, Woodhams & Mills, all of Kalamazoo, Mich., Edward C. McCobb and McCobb, Heaney & Dunn, all of Grand Rapids, Mich., for plaintiff.

Frank E. Liverance, Jr., R. M. Shivel and Linsey, Shivel, Phelps & VanderWal all of Grand Rapids, Mich., for defendants.

STARR, District Judge.

Plaintiff Spring-Air Company, a corporation, of Holland, Michigan, successor to the Charles Karr Company, is principally engaged in the manufacture of spring structures for use in the making of mattresses. The defendants, doing business as the Wire Products Company of Holland, Michigan, are also engaged in the manufacture of spring structures for use in mattresses.

On January 31, 1949, plaintiff filed complaint alleging wilful infringement of the following United States Letters Patent: No. 1,887,058 issued November 8, 1932 (expired November 8, 1949) for a spring assembly; No. 1,922,002 issued August 8, 1933 (expired August 8, 1950) for a spring-assembling machine; and No. 2,026,276 issued December 31, 1935 (expires December 31, 1952) for a spring-assembling machine. Plaintiff asks for an injunction against further infringement, an accounting for profits and damages, and for costs.

Defendants filed answer and counterclaim, denying the charges of infringement and alleging the invalidity of the three patents in suit. They also allege malicious and vexatious conduct on the part of the plaintiff and ask damages therefor, and also for costs of suit and attorney fees. In support of their claim of invalidity defendants cite the following prior-art patents: Heuer, 1,930,715; Kirchner, 1,907,323; Gail, 1,905,459; Kirchner, 1,881,672; Stackhouse, 1,835,819; Lofman, 1,817,087; Stackhouse, 1,812,611; Meister et al., 1,785,839; F. Karr, 1,744,389; Kroehler, 1,706,889; C. D. Karr, 1,656,204; Jackson, 482,965. They also put in evidence the following additional patents: C. D. Karr, 1,938,489; Wunderlich, 1,932,566; Foster, 1,899,087; Karpen, 1,882,649; F. Karr, 1,798,885; F. Karr, 1,596,273; Holtfoth, 1,473,989; Lewis, 1,262,814; Mellon, 1,103,526; Simmons, 1,021,431; Bonnell, 630,967; Templin, 593,-406; Templin, 581,316; Bonnell, 405,821.

The plaintiff contends that the spring structures manufactured and sold by the defendants infringe claims 2 and 4 of its spring-assembly patent No. 1,887,058, and that the spring-assembling machines constructed and used by defendants infringe claims 1, 2, 7, 8, 10, 15, and 16 of its machine patent No. 1,922,002, and Claims 1 to 9, inclusive, and claim 14 of its machine patent No. 2,026,276.

Plaintiff's three patents in suit are presumed to be valid, and the burden is upon the defendants to establish their claims of invalidity by clear and satisfactory proof. Crosley Corporation v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895; Babson Bros. Co. v. Perfection Manufacturing Corp., D.C., 86 F.Supp. 754; Mueller v. Campbell, D.C., 68 F.Supp. 464, affirmed 6 Cir., 159 F.2d 803. See also 2 Walker on Patents, Deller's Ed., pp. 1272, 1273, § 276. However, this presumption of validity is rebuttable and not conclusive. J. J. Warren Co. v. Rosenblatt, 7 Cir., 80 F. 540, certiorari denied 168 U.S. 710, 18 S.Ct. 943, 42 L.Ed. 1211; Dennis v. Great Northern Ry. Co., D. C., 51 F.2d 796; Reynolds v. Emaus, D.C., 87 F.Supp. 451. There is undoubtedly a stronger presumption of validity as to plaintiff's spring-assembly patent 1,887,058 because of its involvement in interference proceedings in the Patent Office, in which certain prior-art patents were considered. However, this stronger presumption is not conclusive and is rebuttable upon a convincing showing of invalidity. In considering the question of the validity of the patents in suit, the court cannot disregard the fact that the decisions of the Supreme Court of the United States in recent years clearly indicate a trend toward a higher standard of invention. In Foxboro Co. v. Taylor Instrument Companies, 2 Cir., 157 F.2d 226, 234, the court said: "Finally, when all else is said, we cannot ignore the change in recent years in the standard of invention adopted by the Supreme Court. It is as idle to pretend that there has been no change (In re Shortell, 142 F.2d 292, 31 C.C.P.A., Patents, 1062), as it would be to protest against it; and it is as much the duty of a lower court to give effect to it, as it is its duty to give effect to any other of the decisions of that court. We are to dispose of the question of invention, so far as we can divine, as we think the Supreme Court would dispose of it". See also Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct.

127; Trabon Engineering Corp. v. Dirkes, 6 Cir., 136 F.2d 24; Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208; Picard v. United Aircraft Corporation, 2 Cir., 128 F.2d 632.

A device or structure, to be patentable, must be more than new and useful; it must satisfy the requirements of invention or discovery and must represent more ingenuity than the work of a mechanic skilled in the art. Funk Brothers Seed Co. v. Kalo Inoculant Co., 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Continental Machines, Inc., v. Grob, 8 Cir., 137 F.2d 470; Emmett v. Metals Processing Corporation, 9 Cir., 118 F.2d 796; American Laundry Mach. Co. v. Strike, 10 Cir., 103 F.2d 453. An extended application of prior-art teachings, mere perfection of workmanship, a change only in size, form, strength, proportions, degree, or the substitution of equivalents doing substantially the same thing by substantially the same means, does not amount to patentable invention. Allen-Bradley Co. v. Square D. Co., 7 Cir., 168 F. 2d 334, certiorari denied 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395; National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26; Crosley Corporation v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895; B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 122 F.2d 900, certiorari denied 315 U.S. 823, 62 S.Ct. 917, 86 L.Ed. 219; Schreyer v. Chicago Motocoil Corporation, 7 Cir., 118 F.2d 852; Mueller v. Campbell, D.C., 68 F.Supp. 464. In Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, the court said: "A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention', 'more ingenuity * * * than the work of a mechanic skilled in the art.' * * * This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee."

In the recent case of Shaffer v. Armer, 10 Cir., 184 F.2d 303, the court said at page 307: " 'The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts.' Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438. The device must not only be 'new and useful,' it must also amount to 'invention or discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76; and 'perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 356–357, 23 L.Ed. 719; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58."

In considering the question as to the validity of each of the three patents here in suit, it should be kept in mind that the patentee in each instance is presumed to know and is chargeable with knowledge of everything disclosed by prior-art patents. Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 128 F.2d 380; Cutler Mail Chute Co. v. Capitol Mail Chute Corporation, 2 Cir., 118 F.2d 63; Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422.

Plaintiff's spring-assembly patent in suit, Karr 1,887,058, was issued to F. (Francis) Karr November 8, 1932, on application filed December 21, 1927, and by assignment became the property of the Charles Karr Company, predecessor of the plaintiff corporation. The defendants contend that this patent is invalid because lacking invention and because fully anticipated and disclosed in prior-art patents, particularly in Karr 1,744,389 issued to F. (Francis) Karr January 21, 1930, on application filed August 27, 1927. Defendants further contend that plaintiff's claim of infringement of 1,887,058 would render it invalid because of double patenting and illegal extension of the protection granted by 1,744,389.

The first question presented is whether plaintiff's patent 1,887,058 for a spring assembly is valid and, if valid,

whether it has been infringed by defendants. The testimony indicates that plaintiff never manufactured or marketed a spring assembly constructed in strict conformance with this patent and, therefore, as a paper patent, it can claim no scope of coverage beyond that specifically disclosed. Roberts v. General Electric Co., 3 Cir., 85 F.2d 964, 965; Stewart-Warner Corporation v. Jiffy Lubricator Co., 8 Cir., 81 F.2d 786. Furthermore, it is a combination patent in a crowded field of the art and, if valid, must be strictly construed.

Prior-art Karr 1,744,389 for a spring assembly expired on January 21, 1947, and thereafter defendants associated together as copartners, acquired factory space, and about January 1, 1948, began the manufacture of spring assemblies. Since that time they have continued to manufacture and market spring assemblies. It is admitted that the spring-assembly structures manufactured and sold by plaintiff and those manufactured and sold by the defendants are substantially the same, and defendants contend that both structures are within the claims of prior-art Karr 1,744,389. It should be noted that applications for 1,744,389 and plaintiff's patent in suit 1,887,058 were both filed by Francis Karr; that he filed application for 1,744,389 August 27, 1927, which was several months before he applied for 1,887,058; also that 1,744,389 was issued January 21, 1930, while 1,887,058 was issued nearly three years later and expired shortly after this suit was begun. Claims 2 and 4 of 1,887,058, which plaintiff contends are infringed, provide as follows:

"2. In a spring assembly, spiral springs arranged in rows, each spring being provided with a distorted portion in its terminal coil forming shoulders, the distorted portions of the springs lapping the terminal coils of the adjacent springs of the same row and helicals encircling the portions that are lapped, the internal diameter of the helical being slightly greater than the combined diameters of the wires of the spring coils, whereby said helicals will hold the lapped portions in lapped position, said helicals engaging said shoulders, thereby preventing rotation of said springs."

"4. In a spring assembly, a plurality of spiral springs, each spring having its terminal coil provided with distorted portions having shoulders at each side thereof, the terminal coils of adjacent springs lapping each other, helicals encircling the lapped portions of said springs and holding them in lapped position, the lapped portion of each coil engaging opposite portions of the interior of said helicals for preventing relative movement thereof, and said helicals engaging said shoulders thereby preventing rotation of said spirals."

The above claims of the patent in suit should be considered in connection with claims 2, 3, and 4 of prior patent Karr 1,-744,389, which provide as follows:

"2. In a spring assembly, a plurality of rows of spiral springs, the terminal coils of adjacent springs being lapped and the lapped portions being provided with distorted portions, and helical springs encircling said lapped portions at each side of said distorted portions only, for connecting said springs and rows together.

"3. In a spring assembly for cushions and the like, a plurality of resilient spirals arranged in rows, the terminal coils of each spiral lapping the terminal coils of the adjacent spirals in the same row, one of the lapped portions of each terminal coil being provided with a distorted portion, helicals extending about the engaging parts of the lapped portions of said coils for connecting said coils and said rows together.

"4. In a spring assembly, a plurality of rows of spiral springs, the terminal coils of adjacent springs of each row being lapped, and one of said lapped portions of each terminal coil being provided with a distorted portion forming shoulders, and helical connecting coils extending transversely to said rows and encircling a part of said lapped portions of the corresponding springs of adjacent rows for connecting said springs and rows together, said helical connecting coils engaging said shoulders for preventing rotation of said spiral springs."

The claims of both of these Karr patents provide in general for a spring assembly comprising a plurality of spiral springs ar-

ranged in adjacent rows with each spring having its terminal coil distorted at opposite sides to form shoulders, with the distorted portions of the coils overlapping those of the adjacent rows, and with helical springs encircling the lapped portions so as to connect the rows by engaging the shoulders of the distorted portions and holding such portions in permanent overlapping relation to prevent rotation of the spiral springs. The only material change which plaintiff's patent in suit made over Karr 1,744,389 was the provision for "the internal diameter of the helical being *slightly* greater than the combined diameters of the wires of the spring coils." In its brief plaintiff summarizes the innovations of its patent in suit 1,887,058 as comprising a combination of "two adjacent spirals having distorted terminal coils, which coils are overlapped along their distorted portions, and are engaged *snugly* by a helical connecting member at the point of their overlap." It claims that in Karr 1,744,389 the internal diameter of the connecting helicals which engage the terminal turns of the adjacent spirals, is *substantially greater* than the combined diameters of the spiral wires in said terminal turns and that this looseness of the helical permits lateral movement of the spiral turns, causing a clicking of wires; while in its patent in suit, Karr 1,887,058, the inside diameter of the helical is *"only slightly greater"* than the combined diameters of the lapped wires of the adjacent spiral springs, and that such tightness prevents lateral movement of the spiral turns, thus preventing clicking of wires. In other words, the only new element of any consequence that plaintiff claims for 1,887,058 is the "tight helical" to overcome a clicking noise which, it contends, had previously occurred between the terminal coils of the spirals and the inside surface of the helicals because of looseness of the helicals.

The overlapping of curved or distorted portions of spiral springs and their connection by helicals at the overlapped portions is old and shown in many prior patents, particularly F. Karr, 1,798,885; F. Karr, 1,744,389; Kroehler, 1,706,889; C. D. Karr, 1,656,204; F. Karr, 1,596,273;

Mellon, 1,103,526; Bonnell, 405,821; and Bonnell, 630,967, which latter Bonnell patent indicates connecting helicals which tightly engage the overlapped portions of the spring spirals, preventing loose motion thereof. It is significant that the specifications of 1,744,389 and 1,887,058 both describe their spring-connecting arrangements as being "practically noiseless in use." Examination indicates that defendants' accused spring assembly is constructed substantially in conformance with prior patent 1,744,389, which expired before they began their manufacture. Therefore, as plaintiff contends that defendants' accused assembly infringes its patent 1,887,058, it could be argued with some force that plaintiff's patent was fully anticipated by 1,744,389.

Patent in suit 1,887,058 is a combination patent for an improvement in the method of connecting spiral springs. It comprises elements old in the art, combined with a reduction in the internal diameter of the connecting helical and a slight change in the shape of the distorted portions of the spring coils which the helical encircles. It is clear that this combination of old elements with a slight change in the internal diameter of the connecting helical and a slight change in the shaping of the distorted portions of the spring coils does not give rise to valid, patentable claims embracing the entire spring-assembly structure. Simplex Paper Box Corporation v. Boxmakers, Inc., 7 Cir., 116 F.2d 914; National Brass Co. v. Michigan Hardware Co., D.C., 71 F.Supp. 980; 1 Walker on Patents, Deller's Ed., 1950 supp. to page 217; 2 Walker on Patents, Deller's Ed., page 789, § 166. In Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549–550, 58 S.Ct. 662, 664, 82 L.Ed. 1008, the court said: "the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

In Vischer Products Co. v. National Pressure Cooker Co., D.C., 71 F. Supp. 973, 978, the court said: "Improving one element in a combination gives no right

to reclaim the old combination with the new element." See also Bassick Manufacturing Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251; 1 Walker on Patents, Deller's Ed., pages 211–218. Mere difference in design and construction of patented device over prior art, involving no new principle and accomplishing nothing more than what one skilled in the art would readily discern, does not amount to invention. H. W. Gossard Co. v. Loeber's, Inc., 7 Cir., 114 F.2d 166, certiorari denied 312 U.S. 680, 61 S.Ct. 450, 85 L.Ed. 1119. Trivial modification of a product does not show invention. Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., Inc., 7 Cir., 111 F.2d 880. Improvements over the prior art, to be patentable, must be the product of some exercise of the inventive faculties and something more than what is obvious to persons skilled in the art. Crosley Corporation v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895, 903. A patent should not be granted for the discovery of a result that would flow naturally from the teachings of the prior art. In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726. A patentee must make some addition to the common stock of knowledge and not be merely the first to use in combination what was known before without producing a new and different result. Electric Vacuum Cleaner Co., Inc., v. P. A. Geier Co., 6 Cir., 118 F.2d 221, 224. In Thompson v. American Tobacco Co., 4 Cir., 174 F.2d 773, 777, the court said: "mere structural changes which involve nothing more than the exercise of the skill of the art do not rise to the dignity of invention." In considering a patent comprising a combination of old elements which it was claimed produced a new and useful result, the court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S. Ct. 127, 130, said in part: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

Plaintiff's patent 1,887,058 claims a combination for an improvement in a crowded field of the art. In considering combination claims in a crowded field, the court said in Shaffer v. Armer, supra, 184 F.2d at page 307: "to make sure that a monopoly is not granted for mere perfection of workmanship, the courts closely scrutinize claims to combinations for improvements in a crowded art. Halliburton Oil Well Cementing Co. v. Walker, 329 U. S. 1, 10, 67 S.Ct. 6, 91 L.Ed. 3; Hollywood-Maxwell Co. v. Streets of Tulsa, 10 Cir., 183 F.2d 261."

In summary, the court is convinced that plaintiff's spring assembly as described in its patent 1,887,058 lacks such novelty, utility, and substantial advance in the art as is necessary to establish invention. The possible, slight improvement in the connecting helical by lessening its internal diameter, and the slight change in the shape of the distorted portions of the spiral springs which the helical encircles, do not entitle plaintiff to a combination or structural patent on its entire spring assembly. Substantially the same results by substantially the same means have been obtained in the prior art. The slight change in the internal diameter of the connecting helical and the slight change in the shape of the distorted portions of the spiral springs represent nothing beyond the ability and adaptation of a skilled and experienced mechanic. The court concludes that patent in suit 1,887,058 is invalid because fully anticipated in the prior art, and for the further reason that it does not represent discovery or invention within the meaning of the patent law. Having concluded that this patent is invalid, the question of its infringement by defendants does not arise.

Plaintiff also charges infringement of its spring-assembly-machine patents, C. D. Karr No. 1,922,002 (expired August 8, 1950) and Erickson No. 2,026,276, which will expire December 31, 1952. These patents are, of course, presumed to be valid, and the burden is upon the defendants to establish their claims of invalidity by satisfactory proof. However, this presumption of validity is rebuttable and is not conclusive. The defendants contend that 1,922,002 is invalid because lacking invention and because fully anticipated and disclosed in prior patents, particularly in Gail 1,905,459 issued April 25, 1933, on application filed November 18, 1929. Defendants further contend that 2,026,276 is invalid because lacking invention and because fully anticipated and disclosed in prior patents, particularly in Karr 1,922,002. These two machine patents are in a crowded field of the art relating to the connecting of rows of spiral springs with helicals to form a spring assembly. Each patent combines elements old in the art with some changes or additions, which combinations the plaintiff contends establish invention and the validity of the patents. The authorities hereinbefore cited relative to the validity of combination improvement patents in a crowded field, and as to what constitutes invention, apply with equal force to these machine patents.

Patent 1,922,002 provides in general for a machine to connect rows of spiral springs with helicals to form a spring assembly for use in mattresses, cushions, and the like. The patent describes a machine comprising a table movably supported on a frame to support rows of spiral springs; upper and lower spring-holding members referred to as jigs[1] mounted in spaced relation in a vertical plane for positioning and releasably holding the adjacent upper and lower portions of the terminal coils of spiral springs in contiguous relation; means for guiding and rotating said helicals about their longitudinal axes to engage the adjacent terminal coils; and manually operated means for releasing the helically connected spirals from the spring-holding members and moving them rearward on the table. Claims 10, 15, and 16 of plaintiff's patent 1,922,002, which are reasonably illustrative, read as follows:

"10. In a spring assembling machine, a frame, a table movably supported on said frame and adapted to support rows of spiral springs, a spring holding member associated with said table, said member comprising spring positioning and holding elements, guides on said member, means for causing a helical to engage said guides for guiding said helical about the adjacent portions of the terminal coils of spirals of adjacent rows, means for releasing said springs, and means for elevating said table for releasing said spirals from said spring-holding means."

"15. In an assembling machine for connecting adjacent rows of spiral springs with connecting helicals for forming a spring assembly, a supporting frame, upper and lower spring holding members mounted on said frame in spaced relation in a substantially vertical plane, said members having channels facing each other, the sides of said channel having cut-away portions for receiving the adjacent portions of the terminal coils of adjacent rows of said spiral springs at each end thereof, means for positioning and holding said spiral springs, means for rotating said helicals for engaging the portions of said springs extending through said cut-away portions into said channels, and for advancing said helicals, and means for releasing said holding means."

"16. In a spring assembling machine for connecting rows of spiral springs together by helicals, comprising a support, a table movable vertically relative to said support, said table being adapted to support rows of spiral springs, upper and lower spiral spring holding members, means for raising and lowering said upper member, said lower member being secured to said support in such position that said table may be elevated above the same, means on said members for positioning and holding the adjacent portions of the terminal turns of each spiral spring, means for weaving helicals about

1. Also referred to as clips, jaws, and fixtures.

the adjacent portions of said terminal turns of adjacent rows, and means for elevating said table and for releasing said spirals whereby the same may be pushed rearwardly on said table."

The idea of connecting rows of spiral springs with helicals was old when plaintiff's machine patent 1,922,002 was applied for. Kroehler 1,706,889 issued March 26, 1929, provided for the connection of adjacent rows of spiral springs by the use of helicals, referred to as "spiral connector-wires." It also provided means for engaging and holding the terminal coils of the spirals, for guide grooves, and for means for driving said helicals through the guides to form connecting engagement with the end rings of the adjacent rows of the lower coils of the spiral springs. Karr 1,656,204, applied for September 30, 1926, and issued January 17, 1928, described a mechanism for connecting rows of spiral springs, comprising a platform, means for supporting spiral wire units in rows with portions of said spirals adjacent to each other, fixtures about which the lower end forms of the vertical spirals were placed, grooves for the connecting helicals to follow, and means for rotating and advancing said helicals to encircle and connect the lower end portions of the spiral springs of adjacent rows. Other prior-art patents provide divers means for connecting rows of spiral springs with helicals to form a spring-assembly unit. See Wunderlich, 1,932,566, application filed November 21, 1930; also Lofman, 1,817,087; Templin, 593,406; Templin, 581,316. The idea of connecting both the lower and upper ends of adjoining rows of spiral springs by helicals in one operation is shown in prior patents, Stackhouse, 1,-812,611, issued June 30, 1931, on application filed March 5, 1930, and Stackhouse, 1,835,-819, issued December 8, 1931, on application filed March 5, 1930. Defendants rely principally on prior-art Gail, 1,905,459, applied for November 18, 1929, issued April 25, 1933, as fully anticipating the combination of elements, or equivalents thereof, shown in plaintiff's patent 1,922,002. It is apparent that Gail and Karr both sought a more efficient means of assembling rows of spiral-coil springs by the use of connecting helicals. It may be noted that application for the Gail patent was filed about two years prior to the application for 1,922,002 and was issued several months prior to 1,922,002. Claims 4, 15, and 18 of the Gail patent, which are reasonably illustrative, are set forth in the margin below.[2]

2. "4. Spring assembling mechanism of the character described, comprising in combination means for supporting parallel rows of coil springs with corresponding end coils of two rows lying adjacent to each other, means for feeding a wire helix endwise between said end coils and simultaneously rotating said helix on its axis, means for guiding said helix so as to cause the coils thereof to be wrapped around adjacent portions of said spring coils, means for displacing said helix from said guiding means, and means for shifting said rows of springs laterally of said guiding means whereby to bring a new row into register with said guiding means."

"15. In a machine for assembling and connecting parallel rows of coil springs, the combination of a frame structure, spaced bed and top plates mounted on said frame structure, means on the opposed surfaces of said plates for guiding the end coils of rows of springs inserted between said plates, opposed jaws slidably mounted on the upper face of said bed plate and on the under face of said top plate, the inner faces of said jaws being spirally grooved and forming, in the inner position of said jaws, guide channels adapted to be entered by adjacent portions of the end coils of adjacent rows of springs, spirally grooved strips forming the bottom walls of said guide channels, means for feeding wire helicals endwise through said channels and simultaneously rotating said helicals on their axes, and means for separating said jaws to release said helicals."

"18. In a machine for assembling and connecting parallel rows of coil springs, the combination of a frame structure, spaced bed and top plates mounted on said frame structure, means on the opposed surfaces of said plates for guiding the end coils of rows of springs inserted between said plates, guide channels on the opposed surfaces of said plates extending crosswise of said coil guiding means and adapted to be entered by adjacent portions of the end coils of adjacent rows of springs, cross-heads slidably mounted on said frame structure, upper and lower rock shafts jour-

Gail 1,905,459, and Karr 1,922,002 both provide for elements in common as follows: A supporting table, with jigs separable and movable toward and away from each other for holding overlapped parts of the lower end coils of spiral springs arranged in rows on the table, and means for guiding the connecting helical as it is rotated to encircle the adjacent portions of the spiral springs; an upper support for jigs to hold the upper end coils of the rows of spiral springs, and with means for guiding the connecting helical as it is rotated, to connect the coils; a movement of the rows of spiral springs over the table to a connecting engagement with the holding jigs, said jigs being opened and closed automatically in Gail and manually in Karr; simultaneous feeding of helicals to connect both the upper and lower ends of the spiral springs, the helicals used in the Karr machine being preformed, while Gail provides for a helical-forming-and-feeding mechanism but with the statement that a mechanism to feed preformed helicals may be substituted for the combined helical-forming-and-feeding mechanism; the guidance of the helicals through the use of tubular guides flared out at the entrance ends; the disengagement of the spiral springs from the jigs after their helical connection, this disengagement being automatically performed by a rotating cam in Gail and by manual, foot-pedal operation in Karr. The disengagement in Gail is by members exerting downward pressure on the upper ends of the helically connected springs and pushing upward on the lower connected ends thereof to accomplish a vertical movement of the springs and holding jigs; while the disengagement in Karr is performed by manually lifting the upper jigs and lifting the springs at their lower ends. Gail provides for lifting the springs at their lower ends but reverses the movement at the upper ends by pushing the springs down. The same result, that is, the disengagement of the spring spirals, is accomplished by equivalent mechanisms and operations.

Both Karr 1,922,002 and Gail 1,905,459 produce the same result, that is, a substantially similar spring-assembly product comprising rows of spiral springs connected by helicals. Gail provides for a machine that is fully automatic in operation while Karr provides for a less complete machine, partially manually operated. The Karr foot-lever operation for releasing the spiral coils from the holding jigs is indicated by prior-art patent Holtfoth 1,473,989. The Gail machine would in many particulars appear to be a more complete machine than that of Karr. Karr apparently omitted certain of the mechanical elements of Gail and adopted all other elements, or equivalents thereof. The principal difference between the two machines is in the methods employed to open and close the holding jigs and release the spiral springs after their helical engagement. This difference represents only the varying means that different mechanics conversant with the art of forming spring structures might adopt for opening and closing the holding jigs and for releasing the helically connected spirals. The same results are accomplished by substantially the same means in both Gail and Karr, and the possible, minor improvements in the Karr holding-and-releasing mechanisms certainly do not constitute invention within the meaning of the patent law. The fact that in Karr the helicals connecting the upper and lower terminal coils of adjacent spiral springs are fed into the same side of the machine, whereas in Gail they are fed into opposite sides, is merely a choice of method and an adaptation which any mechanic skilled in the art could readily discern.

[23] In summary, Karr patent in suit 1,922,002 is fully anticipated in Gail and other prior patents and does not represent invention. It is a combination patent for an improvement in a crowded field and merely

naled in and between said cross-heads, stripper fingers mounted on said rock shafts extending across the bottoms of said channels, means for feeding wire helicals endwise through said channels and simultaneously rotating said helicals on their axes, means for tilting said rock shafts to thereby cause said stripper fingers to dislodge said helicals from said guide channels, and means for imparting a reciprocating movement to said cross-heads."

combines elements old in the art, or equivalents thereof, and represents no more than the work of a skilled mechanic. It is invalid because fully anticipated and because lacking invention. As it is invalid, no question is presented as to its infringement by defendants.

The defendants further contend that plaintiff's patent 2,026,276 for a spring-assembling machine is invalid because lacking invention and because fully anticipated in prior-art patents, particularly in plaintiff's patent, Karr 1,922,002. It may be noted that application for No. 2,026,276 was made by Erickson September 30, 1933, or about two months after 1,922,002 had been issued to Karr, and further that Erickson had initially appeared with Karr as a joint inventor in the application for 1,922,002. It is, therefore, obvious that when 1,922,002 was issued, Erickson as an original coinventor and versed in the art, immediately conceived certain minor changes in the adjustability of parts which he embodied in his application for 2,026,276. Claims 3, 6, and 14 of 2,026,276, which are reasonably illustrative, read as follows:

"3. In a spring assembling machine, a platform for supporting two rows of springs adjacent to each other, a plurality of upper jigs and a plurality of lower jigs arranged in rows one above the other for holding said springs in assembling position, and means interlocking with said support for supporting and independently adjusting each of said jigs longitudinally of said rows for making spring assemblies of different constructions."

"6. In a spring assembling mechanism, a jig for holding and guiding elements of a spring assembly, said jig comprising a stationary portion having a U-shaped projection thereon for receiving a terminal turn of a spiral spring, a movable section having an inwardly extending finger for engaging said turn for holding the same in position, means for guiding a helical around said turn and a supporting plate having a slot therein for adjustably securing said jig to a supporting member."

"14. In combination, a frame, a table pivoted to said frame and having an opening extending across its forward end portion, a lower bar mounted on said frame beneath said opening, a plurality of spring holdings jigs adjustably secured to said bar, a lever at each side of said frame, means for pivotally connecting said levers to said frame, an upper bar secured to said levers, a plurality of wire holding jigs adjustably secured to said upper bar, each of said jigs comprising a stationary jaw and a movable jaw, an operating arm rigidly secured to each of said movable jaws and extending outwardly therefrom, operating bars pivotally connected to said upper and lower bars, operating levers pivoted to said frame and having pin and slot connections with said operating bars, means for resiliently clamping said operating arms and operating bars together, pins on said operating levers for engaging beneath said first named levers for elevating the same when said operating levers are elevated, links pivoted to said table and having pin and slot connections with said first named levers, a lever pivoted at its intermediate portion to each side of said frame, link connections between the rear ends of said last named levers and said operating levers, and means including a treadle for raising and lowering the forward ends of said levers, and a spring for holding said treadle elevated whereby upon initial downward movement of said treadle said jigs will be released and upon further depression said table and upper bar and jigs attached thereto will be elevated."

The only improvements which plaintiff claims for 2,026,276 over 1,922,002 is in making the holding jigs adjustable to different positions on their supporting bars, a redesigning of certain parts of the jigs so that they may be moved and located at different positions on the supporting bars, and some minor change in the mechanism for guiding the connecting helicals. In other words, in Karr 1,922,002 the jigs are in fixed position on the supporting bars and only one spring-assembly pattern can be made with such jigs, and to change the assembly pattern would require a change of the bars; while in 2,026,276 the holding jigs are adjustable to different positions on the supporting bars and different patterns

90

of spring assemblies can be made by the adjustment of the jigs without the substitution of new bars. To accomplish this adjustability of the jigs in 2,026,276, the plate of the jig is slotted in order that a set screw can be passed through the slot into an interiorly threaded hole in the supporting bar. It is obvious that this constitutes only an adjustability of parts which in prior-art 1,-922,002 were in fixed position.

■ The minor change shown in 2,026,-276 for guiding the connecting helicals, represents no more than the work of a mechanic familiar with the art. The more serious question is whether making the jigs adjustable on their supporting bars by the use of a slotted plate and set-screw attachment, constitutes invention. The advantage of having the jigs adjustable in horizontal positions on their supporting bars was, of course, readily apparent to inventor Erickson, who was an initial inventor with Karr in the application for prior patent 1,922,002. However, it has long been recognized that adjustability alone does not constitute invention. See Peters v. Hanson, 129 U.S. 541, 9 S.Ct. 393, 32 L.Ed. 742; Karl Kiefer Mach. Co. v. United States Bottlers Machinery Co., 7 Cir., 114 F.2d 169; Smyth Mfg. Co. v. Sheridan, 2 Cir., 149 F. 208; Continental Machines, Inc., v. Grob, 137 F.2d 470; Westinghouse Air Brake Co. v. Schwarze Electric Co., 6 Cir., 108 F.2d 352; Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422; Williams Mfg. Co. v. United States Shoe Mach. Corporation, 6 Cir., 121 F.2d 273; Paquette v. Potter Mfg. Co., 6 Cir., 46 F.2d 271. In the Smyth Mfg. Co. Case the court said, 149 F. at page 211: "If we had the particular combination of complainant's groups of sewing devices, spool-holders, and reels with 'one part of each group of sewing devices,' as its expert says, 'arranged on a particular part of the machine, to wit, the sheet-holder bar, * * * and another part of the group upon another part of the machine, to wit, the stationary transverse bar,' but all rigidly affixed to their respective mountings, *it would require no more than the ordinary ingenuity of the skilled mechanic to cut slots and arrange washers, set screws, etc., so as to give to

*each part of each group capacity for lateral adjustment."*

In the Peters Case the court said, 129 U.S. at pages 550–551, 9 S.Ct. 393 at page 396; "The use of a bolt passing through a hole, and secured by a nut, to fasten one article of iron to another, was a well-known device; and so was the use for the same purpose of a slot which admitted of the adjustability or change of position of the bolt."

■ Plaintiff's patent 2,026,276 is an improvement patent in a crowded field and comprises only a combination of elements old in the art of spring connection, with the new element of adjustable holding jigs instead of stationary jigs. The Erickson assembling machine described in 2,026,276 is substantially a reproduction of the earlier Karr machine described in patent 1,922,002, with the one change of adjustable jigs instead of stationary jigs for holding the adjacent wires of spring spirals while they are being connected with helicals. The Erickson machine produces the same results, that is, the same assembly of spring spirals, by substantially the same method and means as that disclosed in the prior Karr patent. No new or better results are obtained. Merely making the jigs adjustable in position on their supporting bars by the use of a slot and set screw certainly does not represent invention within the meaning of the patent law. The use of a slot and set screw as a means of fastening one part to another to effect adjustability is common practice and old in many arts. Although such adjustability may represent some improvement in the means for assembling spring structures, it nevertheless represents only such an improvement as would be obvious to any mechanic skilled in the art or who had ever noted the adjustability of license plates in the holding brackets on automobiles.

A device to be patentable must be more than new and useful—it must satisfy the requirements of invention or discovery and must represent more ingenuity than the work of a mechanic skilled in the art. Mere perfection of workmanship or difference in design and construction over the

prior art, involving no new principle and accomplishing nothing more than a skilled mechanic would readily discern, does not amount to invention. The improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function or accomplish no new result in the combination. Improvements over the prior art, to be patentable, must be the product of some exercise of the inventive faculties. Mere structural changes which involve nothing more than the exercise of skill in the art do not constitute invention. See authorities hereinbefore cited; also Crosley Corporation v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895; Reynolds v. Emaus, D.C., 87 F.Supp. 451; National Brass Co. v. Michigan Hardware Co., D.C., 71 F.Supp. 980. The jigs in the prior Karr patent were in fixed positions on their supporting frame, while in the Erickson patent in suit 2,026,276, the jigs are made adjustable as to their distance apart on their supporting frame by the use of slots and set screws. The court is convinced that this adjustability in position, when combined with other elements old in the art, does not constitute invention entitling the plaintiff to a monopoly on the idea of adjustability through the use of a slot and set screw, or to a monopoly on the spring-assembling machine shown in 2,026,-276. For the reasons herein stated, the court concludes that plaintiff's patent in suit 2,026,276 is invalid and, being invalid, the question of its infringement does not arise.

Other questions as to the business practices of the parties in hiring employees and in their methods of selling in the mattress industry do not merit consideration or determination.

The defendants are entitled to a judgment determining the plaintiff's three patents in suit to be invalid and dismissing the complaint.

## Findings of Fact

1. The plaintiff is the assignee and owner of the three Letters Patent in suit, F. Karr No. 1,887,058, C. D. Karr No. 1,922,-002, and Erickson No. 2,026,276.

### Re: F. Karr No. 1,887,058

2. No. 1,887,058 is a combination patent for an improvement in spring assembly and is in a crowded field of the art. This patent combines elements old in the art of spring assembly with a slight reduction in the internal diameter of the spring helical connecting the spiral spring coils, and a slight change in the shaping of the distorted portions of the spring coils which the helical encircles; this combination of old elements with slight changes in the internal diameter of the connecting helical and in the shape of the spring coils does not represent discovery or invention within the meaning of the patent law; these changes represent only the mechanical skill of one conversant with and skilled in the art; the structure described in this patent lacks such novelty, utility, and advance in the art as is necessary to establish invention.

3. The spring-assembly structure described in patent 1,887,058 was fully anticipated in F. Karr 1,744,389 and other prior-art patents cited by defendants.

4. Patent 1,887,058 is invalid.

### Re: C. D. Karr No. 1,922,002 and Erickson No. 2,026,276

5. Patents in suit Nos. 1,922,002 and 2,026,276 are both combination patents for improvements in spring-assembling machines and are in a crowded field of the art.

6. Patent 1,922,002 combines elements old in the art with merely a change in the methods employed to open and close the holding jigs and release the spiral springs after their helical engagement; these changes in method are merely equivalents of elements shown in the prior art and represent no more than the accomplishment of a skilled mechanic.

7. The methods employed to open and close the holding jigs and release the spiral springs after their helical engagement as shown in 1,922,002 do not represent discovery or invention within the meaning of the patent law.

8. Patent 1,922,002 was fully anticipated in Gail 1,905,459 and other prior-art patents cited by defendants.

9. Patent 1,922,002 is invalid.

10. The only changes which patent in suit 2,026,276 shows over prior patent 1,922,002 are in making the jigs holding the upper and lower ends of the spiral coils, movable and laterally adjustable to spaced-apart positions on their supporting bars, and some minor change in the mechanism for guiding the connecting helicals.

11. The adjustability of the jigs on their supporting bars, as shown in 2,026,276 is accomplished by the slotting of the plate of the jig so that a set screw can be passed through the slot into an interiorly threaded hole in the supporting bar. This change constitutes only an adjustability of the parts which in prior patent 1,922,002 were fixed.

12. Patent in suit 2,026,276 is substantially a reproduction of Karr 1,922,002, with the holding jigs made adjustable in distance-apart position on their supporting bars through the use of a slotted plate and a set screw. This adjustability does not represent discovery or invention, but only such an improvement as would be apparent to any mechanic skilled in the art. The slight change in the mechanism for guiding the connecting helical, and other minor changes shown in 2,026,276, do not represent invention or more than the work of a skilled mechanic.

13. Patent 2,026,276 was fully anticipated in prior patent 1,922,002 and other prior-art patents cited by defendants.

14. Patent 2,026,276 is invalid.

Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter of this suit.

2. As the plaintiff's three patents in suit are combination, improvement patents in a crowded field of the art, they must be strictly construed.

3. None of plaintiff's three patents in suit represents discovery or patentable invention within the meaning of the patent law.

4. Each of plaintiff's three patents in suit was fully anticipated in prior-art patents.

5. Each of plaintiff's patents in suit is invalid.

6. As each of plaintiff's three patents in suit is invalid, there is no infringement by defendants.

7. Other questions raised by the pleadings as to the business practices of the parties do not merit consideration or determination.

Judgment will be entered in favor of the defendants dismissing the complaint. The defendants may recover court costs, but not costs of suit or attorney fees.